# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## THIRD DISTRICT—NOVEMBER TERM, 1892.

## Springside Coal Mining Company v. Dora Grogan, Widow, etc.

1. MINES AND MINING—*What is a Mine.*—A mine is a pit or excavation in the earth from which ores or mineral substances are taken by digging.

2. COLLIERY—*The Term Defined.*—A colliery is defined to be a mine, pit, or place where coals are dug, with the machinery used in discharging and raising the coal.

3. MINES AND MINING—*What is Not a Mine.*—A pit intended to be used, when completed, as the shaft of a coal mine it was designed to open and work, is not a coal mine within the meaning of Sec. 8 of Ch. 93, R. S., entitled "Miners," making it the duty of the owners or operator of coal mines to fence the top of each and every shaft of the mine by gates, properly protecting such top and the entrance thereto.

4. WIDOW—*Right of Action for Death of Husband.*—Sec. 14 of Ch. 93, R. S., entitled "Miners," gives a widow a right of action only in the event that the death of her husband was occasioned by the willful failure of the appellant company to comply with the provision of the statute in question, or by a willful violation of the act.

5. DEATH—*By Negligent Act—Remedy.*—If the death of a person is caused by some mere neglect or default of another, not willful in its character, the right of recovery, if any, is not in the widow, but in the administrator of the deceased, suing for the benefit of the widow and children, the next of kin of the deceased, under the provisions of sections 1 and 2, of chapter 70, R. S.

6. MINES AND MINING—*Application to Coal Mines Only.*—The provisions of the statute (Ch. 93, entitled "Miners") apply only to coal mines; not to mines out of which are taken lead or other materials or ores, nor to pits or excavations, not parts of a coal mine.

(60)

7. STATUTES—*Duty of Court to Expound, Not to Extend.*—Courts may expound statutes but have no power to enact them, nor to extend such as are enacted to cases which it might seem, in good reason, ought to be, but are not, included in them.

8. WILLFULNESS—*Distinguished from Negligence.*—Willfulness and negligence are, it has been well said, the opposites of each other; the one signifying the presence of intention or purpose, the other its absence.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Christian County; the Hon. JESSE J. PHILLIPS, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict for plaintiff, $5,000; judgment; appeal by defendant. Heard in this court at the November term, 1892. Reversed and remanded. Opinion filed November 27, 1893.

The opinion states the case.

APPELLANT'S BRIEF, ANTHONY THORNTON, ATTORNEY.

Appellant contended that the excavation was not a coal mine, within the meaning of the statute.

The power of extending the meaning of a statute beyond its words, is so near the power of legislation, that a wise judiciary will exercise it with reluctance. Monson v. Chester, 22 Pick. (Mass.) 385.

In the mining law of 1872, each section used the words, "each coal mine or colliery." In the amended law, the latter word has been left out, generally, though it is still retained in some of the sections.

The natural meaning of the word is, a place where coal is dug. This is the definition given by all lexicographers. Webster, when you look for "colliery," refers to "coalery," and defines it to be, "a coal mine, coal pit or place where coals are dug, with the engines and machinery used in discharging water and raising the coal." Such is the common, obvious, natural import of the words. Webster defines a mine to be, "a pit or excavation in the earth, from which metallic ores, or other mineral substances, are taken by digging."

"A mine is not properly so called until it is opened, and that was the opinion of My Lord Coke, in his first Inst. b, when he tells us, if a man demises lands and mines, some opened and others not, the lessee may use the mines

opened, but hath no power to dig the unopened mines, and of this opinion was the whole court." Astry v. Ballard, 2 Mod. 193.

"It may be conceded that the term mine, when applied to coal, is generally equivalent to a worked vein, for by working the vein it becomes a mine." Westmoreland Coal Co.'s Appeal, 85 Pa. St. 344.

"And if there be open mines, and if the owner make a lease of the land with the mines therein, this shall extend to the open mines only, and not to any hidden mine." Coke's Inst., Vol. 1, 54 b.

Chief Justice Mansfield said: "In the case of trees, there is a profit in the shade and pannage; but in the case of a mine, the working it is the only mode in which it can be enjoyed." Stroughton v. Leigh, 1 Taunt. 410.

In construing the words, "known mines," as used in the act of Congress, it has been held, that "it is not sufficient to constitute 'known mines' of coal, that there should merely be indications of coal beds or coal fields, as shown by the out-croppings. * * * The circumstance that there are sur-face indications of the existence of veins of coal, does not constitute a mine." Colo. Coal Co. v. U. S., 123 U. S. 307.

The statute uses the words, "coal mine." The courts have no right to substitute other words, but must take the law as it is written. If the excavation in question had turned out to be a lead or silver mine, the statute would not have applied.

The mention in the statute of coal mines is a virtual exclusion of all other mines, and of course excludes a mere excavation which is not, in any sense, a mine. Rex v. Sedgely, 2 B. & Ad. 65.

JOHN E. HOGAN and JOHN G. DRENNAN, attorneys for appellee.

MR. PRESIDING JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

On the 1st day of March, 1889, the appellant company began to sink a pit, which was intended to be used when

completed as the shaft of a coal mine it designed to open and work. Thomas Grogan, husband of the appellee, was, among others, employed to aid in digging and removing the earth from the pit. He began work when the pit was of the depth of eight feet from the surface and continued to be so engaged until the depth of about 200 feet had been reached, when a heavy barrel, which a sudden gust of wind blew into the mouth of the pit, fell to the bottom where he was at work, and struck and instantly killed him. The eighth section of the act of the General Assembly, entitled, " An act providing for the health and safety of persons employed in coal mines," approved May 28, 1879, as amended by an act approved June 30, 1885, makes it the duty of the owner or operator of every coal mine to fence the top of each and every shaft of the mine, by gates properly protecting such top and the entrance thereto. The top or entrance to the pit in which appellee's husband was working at the time of his death, had not been provided with or fenced by gates. The appellee contended that had such gates been provided, the barrel which caused the death of her husband could not have been blown into the pit, and upon the theory that the work which the appellant company was prosecuting was a coal mine, and the appellant required by the statute to fence the same, brought an action under the statute, as his widow, to recover damages occasioned by his death. Upon a trial before the Circuit Court and a jury, she recovered a judg-ment in the sum of $5,000, to reverse which this appeal was taken. The fourteenth section of the act under which the case is prosecuted, gives the appellee, as widow, a right of action only in the event that the death of her husband was occasioned by the willful failure of the appellant company to comply with the provision of the statute in question or by a willful violation of the act. If his death was caused by some mere neglect or default of the appellant, not willful in its character, the right of recovery, if any, is not in the appellee as widow, but in the administrator of the deceased, suing for the benefit of the widow and children, the next of kin of the deceased, under the provisions of Secs. 1 and 2, of Chap. 70,

R. S.    Further, the provisions of the statute by virtue whereof the appellee seeks to recover, apply only to coal mines; not to mines out of which are taken lead or other minerals or ores, nor to pits or excavations, not parts of a coal mine.    So it was essential to appellee's case that the proof should show the appellant company willfully failed or willfully refused to fence by gates the top of the shaft of a coal mine, and that by reason of such willful failure her husband lost his life.    The appellant company, as ground for reversal, insists that, first, the pit described in the declaration and as shown by the proofs, was not a coal mine, and that therefore the statutory duty to fence the mouth of it by gates did not arise; second, that the proofs did not show that the failure to fence was willful; third, that the court instructed the jury that the pit was a coal mine, and that every failure to fence its entrance or top was necessarily willful.

The court at the instance of the appellee, plaintiff below, gave the following instructions:

2.    "The court instructs you that the law is, the top of each and every shaft shall be securely fenced, and a failure to do so is a willful violation of the law; it is not to be understood that it is to be covered, but must be fenced to such height and in such manner, as to make it a reasonably safe, secure fence."

3.    "Even if the evidence shows that the barrel was blown into the air shaft, and was purely an accident, still, if the evidence shows that the shaft was not securely fenced as alleged, so as to reasonably protect the same, and prevent objects from falling therein, then the fact that the barrel was blown in, and was purely an accident, will be no defense to this suit, and would not defeat a recovery, if the jury further believe that if the shaft had been securely fenced, so as to prevent objects falling therein, the injury would not have resulted."

4.    "The court instructs you, in this case, if the defendant failed to securely fence the shaft as alleged, then the law is, that such failure, in law, is a willful violation of law, and that if by reason of such failure to fence the shaft, the

Springside Coal Mining Co. v. Grogan.

barrel was suffered to blow or fall in such air shaft and kill deceased, then if the deceased left the plaintiff his widow and children as alleged, then your verdict should be for the plaintiff even though deceased was not entirely free from fault."

Nothing in one other and the only other instruction given for the plaintiff below, in any respect cured the defects in those we have quoted. Each of the instructions assumes that the pit or hole in which the deceased was working, was a coal mine, and each declares that the statute required the mouth of the pit to be fenced. Whether it was a coal mine was a question of fact. The declaration alleged, and the proof indisputably showed, that the deceased, when killed, was engaged in digging the earth in the bottom of a pit or hole, which was intended, when completed, to be used as the shaft of a coal mine, which the appellant company designed to open and operate. No mine was being operated or worked; no coal had been mined; none had been found to mine; nor was it even shown that there were any indications of the existence of coal that the pit or hole would ever reach.

Lexicographers define a mine to be a pit or excavation in the earth from which ores or mineral substances are taken by digging. A colliery is defined by the same lexicographers to be a mine, pit or place where coals are dug, with the machinery used in discharging and raising the coal.

In the Westmoreland Coal Co's. Appeal, 85 Pa. St. 344, it was ruled that the term, mine, when applied to coal, is equivalent to a worked vein; for it is there said, " by working a vein, it becomes a mine." In Astry v. Ballard, 2 Mining Reports, 291, it was held that a seam of coal, unopened, is not a coal mine. The pit or hole in which the deceased was killed was not a " coal mine " in the natural, obvious or popular meaning of those words. Statutes are to be interpreted according to the natural, obvious, popular meaning of the language employed. Potter, Dwarris, pp. 143–144. Counsel refer us to the case of Coal Run Co. v. Jones, 19 Ill. App. 365, which they contend holds that the statute applies to a work like that in which the deceased was

engaged.   We do not think it is so held.   In the statement
of facts in the case cited, it is said, "the Coal Run Com-
pany had just completed an extension of its shaft below a
vein of coal that it had been working and mining and had
reached and dug through a lower vein and had dug several
feet below it for the purpose of collecting the drainage of
the mine," and in the opinion of the court says, "workmen
were actually engaged in mining coal from the first vein.   *
*   *   The deceased himself was about to pick up and place
in the cage a lump of coal when the explosion occurred."

These facts were held sufficient to justify a finding that
the place was a coal mine, within the meaning of the statute,
and we think nothing beyond that is or was intended to be
held.

It is argued that the object and purpose of the statute
was to guard against accidents and injuries of the exact
kind and character as that which resulted in the death
of the husband of the appellee, and that her case is clearly
within the reason and spirit of the enactment.   This is as
fully true of all pits or holes made in the earth, and if
allowed to control, would extend the operation of the stat-
ute to pits or holes by which it was designed to reach and
open lead or other mines of every kind.   Pits or holes
intended to be used as salt wells or to procure water for
stock or other purposes, where employes would be exposed
to like danger, as that which caused death in the case at bar,
would be equally within the spirit and reason of the statute.
The General Assembly, however, restricted the statute to
coal mines.   Courts may expound statutes, but have no power
to enact them, nor to extend such as are enacted, to cases
which it might seem in good reason ought to be, but are not,
included within them.   "All authorities agree, it is said in
Sutherland on Statutory Construction, Sec. 235, that courts
can not correct the excesses, or supply omissions in legisla-
tion."

Hence we can only say that as the deceased was not work-
ing when killed, in a coal mine, the statute in question has no
application to a case brought to recover damages because of

his death, but if such death was occasioned by the neglect or default of the appellant company, recovery might be had under the provisions of Secs. 1 and 2, Chap. 70, R. S., for the benefit of the appellee and his children. In such an action, the question whether the deceased exercised ordinary care for his own safety, would be material to a right of recovery if the neglect or default of the appellant company was not willful.

The fourth instruction declares that " if the defendant failed to securely fence the shaft, then the law is that such failure is a willful violation of law," and the second and third instructions are to the effect that a liability under the statute arises from a failure to fence, without regard to the character of the omission, whether willful or only inadvertent. A clear distinction is to be drawn between a negligent omission and a willful failure to act.

Willfulness and negligence are, it has been well said, the opposites of each other, the one signifying the presence of intention or purpose, the other its absence. 4 Amer. & Eng. Ency. of Law, p. 80, note 4; page 81, note 2.

In Peoria Bridge Co. v. Loomis, 20 Ill. 251, the court said : " To constitute willfulness, the act done or omitted to be done, must be intended," and in City of Chicago v. Martin, 49 Ill. 246, it was said, " mere neglect is not ordinarily ranked as willfulness."

In I. B. & W. R. R. Co. v. Burge, 94 Ind. 46, it was ruled that recovery could not be had under pleadings which charged willful injury, except upon proof that the act which caused the injury was willful. Other authorities are collected and commented upon in the 16th Amer. & Eng. Ency. of Law, p. 392, and the conclusion drawn from them is, " that there is distinction between actionable negligence and a willful tort, and that the distinction is inadvertence of the party in default."

Speaking of the statute under consideration, it was ruled by our Supreme Court, in Catlett v. Young, 143 Ill. 74, that by a willful violation of the law is meant a violation of its provisions, knowingly and deliberately done. A supposi-

titious state of case illustrative of the difference between willfulness and negligence is stated in Shearman & Redfield on Negligence (4th Ed.) Sec. 6, and the conclusion there reached is, that it is a fair question of fact for a jury to determine whether an act is willful or merely negligence, and not a point of law to be ruled upon by the court. It is argued that this court held in Catlett v. Young, 38 App. 201, that "if the mouth of the shaft of a coal mine is not protected in substantial compliance with the statute, the owner of the mine must necessarily be held to have willfully failed to comply with the law." In that case the facts justified the view that the omission was a willful one, and the case was rightly decided, but the expression quoted was not necessary to its proper disposition. The case went before the Supreme Court on appeal, and was there affirmed in an opinion rendered by Mr. Justice Baker, in the course of which it is said: "By this enactment it was intended that in case of injuries occasioned by any willful violation of the act of 1879, or by willful failure to comply with any of its provisions, the right of recovery should not depend upon the exercise of ordinary care of the person injured or killed. This view of the law is, of course, based upon the ground that there has been a willful failure to comply with the requirements of the statute. If the statute has been complied with, or if the injury is not occasioned by the willful violation or willful failure denounced by the statute, but by some other alleged negligence of the mine owner, and the person killed failed to use ordinary care, then there would be no right of action." Catlett v. Young, 143 Ill. 74.

The views thus expressed by our Supreme Court seem to us at variance with the rule announced to the jury in the instructions in the case at bar. Mere non-compliance with the requirements of the statute is not necessarily a willful failure to observe such requirements. A jury might be justified in regarding non-compliance as willful from circumstances, but whether so or not would remain a question of fact for a jury dependent upon proof, either positive or circumstantial.

So it was a question of fact whether the pit or hole in which the deceased was working was a coal mine. The test of the applicability of the statute is not the depth of the pit or hole nor the peril of one engaged in sinking it, but whether it is the shaft of a coal mine. If not the shaft of a coal mine the statute relied upon has no application to it nor to the respective duties and rights of employer and employe while it is being sunk or deepened.

The assumption of the instructions that the work was a coal mine and that the omission to observe the statute was necessarily willful, excluded from the consideration of the jury questions of fact upon which the appellant company was entitled to the judgment of the jury. Being so erroneous it is beyond doubt that they were so prejudicial as to demand a reversal of the judgment. The judgment is reversed and the cause remanded.