596 P.2d 31

ARIZONA DEPARTMENT OF REVE-
NUE; State of Arizona Board of Tax
Appeals, Division One, Appellants,

v.

CYPRUS–BAGDAD COPPER COMPA-
NY, a Division of Cyprus Mines
Corporation, Appellee.

No. 13936.

Supreme Court of Arizona,
In Banc.

May 31, 1979.

Bruce E. Babbitt, John A. LaSota, Jr.,
Former Attys. Gen., Robert K. Corbin,

Atty. Gen. by Mary Z. Chandler, Asst. Atty. Gen., Phoenix, for appellants.

Bilby, Shoenhair, Warnock & Dolph by David W. Richter, Michael Lacagnina, Tucson, for appellee.

STRUCKMEYER, Vice Chief Justice.

This is an appeal by the Arizona Department of Revenue and Yavapai County seeking to reverse a summary judgment entered in the Superior Court of Coconino County classifying construction work in progress at the Cyprus-Bagdad Copper Mine in Yavapai County, Arizona as Class III property for ad valorem tax purposes. Judgment reversed.

The Bagdad Copper Mine has been in operation since 1927, first as an underground copper mine, and since 1946 as an open pit mine. The proven ore reserves of the mine consist of 300,000,000 tons of copper in both oxide and sulfide forms. For some time a 5,700-ton per day mill has been used to recover copper from the sulfide ore and a leaching operation has been used to recover the copper in the oxide ore. The Bagdad Copper Company merged with the Cyprus Mines Corporation in 1973, and Cyprus-Bagdad Copper Company was organized as the successor to the Bagdad Copper Company. Two years later, Cyprus-Bagdad began a $240,000,000 expansion program. The program contemplated a new mill capable of reducing 40,000 tons of copper sulfide per day, expansion of the pit to expose additional ore, new facilities to house additional employees, and new equipment for operations on a larger scale. *The ore to be used in the expanded operation is to be taken from the same mineral deposit which has continuously been mined since 1927.*

Pursuant to statutory mandate, the Department of Revenue determined the full cash value of the Cyprus-Bagdad properties for 1976 to be $46,000,000 for ad valorem tax purposes. Cyprus-Bagdad appealed the valuation to the Arizona Board of Tax Appeals, Division One, asserting that the full cash value was no greater than $14,401,000. After a hearing, the Board of Tax Appeals set the value at $33,600,000, allocating $27,520,000 to the existing facilities and the remainder, $6,080,000, to the new construction then in progress.

Cyprus-Bagdad appealed to the Superior Court, asserting that the decision of the Board erroneously classified construction in progress as Class I property (property of a producing mine) under the Arizona statute § 42–136(A)(1)(d). The Superior Court ruled that the facilities under construction were taxable as Class III property (commercial or industrial) under § 42–136(A)(3), and that Cyprus-Bagdad was entitled to a reduction of its 1976 ad valorem taxes based upon 27% of the assessed value of $6,080,000 rather than upon 60% of the assessed value.

Cyprus-Bagdad's position is that the construction work in progress is ι *r* the purpose of establishing a "new mine" and reasons that since the expansion program had not been completed it was not a producing mine and, therefore, the construction work in progress not being the property of a producing mine was not assessable at 60% of full cash value. It argues:

> "The construction will result in the digging of *new ore* to be transported on a *new conveyor belt* to a *new crusher*, and from there to be processed in a *new mill*, and none of this will happen until the construction is completed. If this is not construction of a new mine, then we are at a loss to determine what would constitute the construction of a new mine * * *."

Cyprus-Bagdad produced three witnesses learned in geology and engineering who testified that they considered the operations at Bagdad as a new mine.[1]

---

1. For example, Fredrick Christian Kruger, Associate *Dean and Professor in the School of Earth Science at Stanford University testified:*

   "Q. What is your definition of a new mine?

   A. Well, let me state a basic principle, that an ore body has no value unless it has a beneficiation plant to go with it. And a beneficiation plant is sometimes called a mill. And likewise a beneficiation plant or mill,

Cyprus-Bagdad defines "mine" as the mill and the ore that the mill is capable of processing over its operational life. By adopting such a definition, the conclusion is compelled that the 5,700-ton per day mill plus the 46,000,000 tons of ore it could process over its remaining life was the producing mine and that the remaining ore (254,-000,000 tons) and the new mill must be a new and separate mine which will not be a producing mine until completed and operational.

A producing mine is defined by A.R.S. § 42–201(6):

" 'Producing mine or mining claim' means any mine or mining claim from which any * * * mineral or mineral substance * * * has been extracted for commercial purposes at any time during a period of three years prior to the first Monday of January of the tax year."

■ The words of a statute will be interpreted in their ordinary sense unless it appears from context that a different meaning was intended. *Castregon v. Huerta*, 119 Ariz. 343, 580 P.2d 1197 (1978). The context in which the word "mine" is used in the above statute does not suggest a meaning beyond that ordinarily conveyed by the words used. A "mine" is any excavation made for minerals. *Ozark Chemical Co. v. Jones*, 125 F.2d 1, 2 (10th Cir. 1942); *Springside Coal Mining Company v. Grogan*, 53 Ill.App. 60 (1892), *affirmed* 169 Ill. 50, 48 N.E. 190 (1897); *Richards v. Fleming Coal Co.*, 104 Kan. 330, 179 P. 380 (1919); Parks, R., Examination and Valuation of Mineral Property, 1 (2d ed. 1949). It is:

"1. A pit or excavation in the earth from which mineral substance (as ores, precious stones or coal) are taken by digging or by some other method of extraction * * * 2. such a pit or excavation together with the land, buildings and machinery belonging to it. b: an ore deposit * * *." Webster's Third New International Dictionary (1976).

■ Cyprus-Bagdad has not cited to any precedent or authority (other than its witnesses) which intimates that a "mine" should or can be defined in terms of ore processed through a mill. The statute defines a producing mine as any mine from which mineral has been extracted during a period of three years prior to the tax year. We hold that size and method of extraction of ore are not relevant to the determination of what is a producing mine under the legislative definition.

■ Cyprus-Bagdad argues that the expanded boundaries of the pit show that it is in fact a different mine and therefore a new mine. But this concept if carried to the ultimate would mean that every shovelful of ore which is removed for processing changes the mine simply because it isn't the same as it was before and would mean, consequently, that since it was different it was a new mine. Such an esoteric notion of the shifting meaning of the words "producing mine" does not conform to obvious legislative purpose. We hold that because the ore which the new mill is to process will be taken from the same ore body and because mineral has been extracted for three years prior to 1976, Cyprus-Bagdad's mine is a producing mine within the meaning of A.R.S. § 42–201(6).

■ Cyprus-Bagdad notes that the Department of Revenue did not use the same method for valuing the existing facilities and the partially completed construction for the new mill. The Department of Revenue used capitalization of income to find the value of the mine's operation and valued the construction in progress by its actual cost. Cyprus-Bagdad's position is that by using different methods of assessing valuation the State recognized that the construction in progress was for a new mine. It therefore urges that the new construction should be valued as Class III property, commercial or industrial, pursuant to § 42–136(A)(3). But here again, Cyprus-Bag-

has no value except scrap value if it has no ore body to go with it.

So if the concentration plant, beneficiation plant mill is designed to treat large tonnages of low grade ore, it probably bears no relationship in design technology to smaller tonnages of a higher grade ore. It seems to me that covers it."

dad's argument is built on a nest of suppositions which evade the plain language of the statute.

A.R.S. § 42–136(B) provides:

"For the purposes of classification of property under this section, partially completed * * * improvements shall be classified according to their intended use."

The purpose of the construction in progress is undisputed. The new mill is to replace the existing mill. Since the intended use of the improvements is for mining purposes, § 42–136(A)(1)(d) applies. Construction in progress at an existing mine must be classified as Class I property.

The remaining questions presented by appellants can be disposed of summarily.

The State argues that Cyprus-Bagdad's valuation may be increased without directly appealing from the valuation as fixed by the State Board. This issue was squarely answered in *Pima County v. Cyprus-Pima Mining Co.*, 119 Ariz. 111, 113, 579 P.2d 1081, 1083 (1978). We held:

"* * * the valuation fixed by the State Board may not be raised except and in the manner provided by law; that is, by direct appeal. * * * [W]here there is no appeal or cross-appeal, a valuation may not be set greater than that fixed by the State Board."

Appellants argue for reversal of the costs taxed in the lower court. Since the judgment of the lower court is reversed, the award of costs in the lower court is ordered vacated and it is ordered that judgment for costs favorable to appellants be entered on appellant's application. Finally, since as a matter of law a judgment must be entered favorable to the appellants, it is unnecessary to pass on the question whether they are entitled to a jury trial.

The judgment of the Superior Court is reversed and the cause remanded for the entry of judgment finding the full cash value of the Cyprus-Bagdad Copper Company as $33,600,000 for the taxable year 1976 and for such other relief as is appropriate in the premises.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.