800 P.2d 987

**HAYDEN PARTNERS LIMITED PART-
NERSHIP, an Arizona limited
partnership, Plaintiff–Appellant,**

v.

**MARICOPA COUNTY, a political subdi-
vision of the State of Arizona; and the
Department of Revenue of the State of
Arizona, Defendants–Appellees.**

No. 1 CA–TX 89–007.

Court of Appeals of Arizona,
Division 1, Department T.

Oct. 4, 1990.

Nearhood & Associates, P.C. by James
R. Nearhood, Phoenix, for plaintiff-appel-
lant.

Robert K. Corbin, Atty. Gen. by Jack B.
Schiffman, John William Ranby and Sandra
B. Kelley, Asst. Attys. Gen., Phoenix, for
defendants-appellees.

OPINION

FIDEL, Judge.

The appellant, the developer of a partial-
ly completed and partially sold residential
subdivision, appeals the trial court's deter-
mination that certain subdivision property
still owned by the developer was properly

classified as class four undetermined usage property rather than class five residential property for the 1986 tax year.[1] We consider three types of property: (1) unsold residential lots containing completed or partially completed residences; (2) common area tracts on which a swimming pool and ramada or landscaping had been completed; and (3) residential lots on which the developer had completed landscaping, grading, paving, and utility installations, but had not yet started to build houses. We conclude that all three types of property were objectively committed to a residential end use and that a class five designation was improperly denied.

## FACTS

A parcel of approximately nine acres in Scottsdale, Arizona, is the subject of this case. When the taxpayer, Hayden Partners Limited Partnership, acquired the parcel in June 1980, there were no streets, curbs, sidewalks, utility connections, or structures on it.

Hayden Partners undertook to develop the parcel as a residential subdivision and, on June 16, 1983, recorded a subdivision plat. The subdivision, named "Villa Antano," consisted of seventy-seven residential lots and eight common area tracts. Hayden Partners began grading and leveling the property in July 1983, and commenced adding utilities, streets, curbs, and sidewalks the following month.

In September 1983, Hayden Partners recorded a declaration of covenants, conditions, and restrictions for Villa Antano that restricted the property exclusively to single family residential use. The common areas and facilities are limited to use by Villa Antano residents and their guests and invitees.

As of January 1, 1986, the eight common area tracts were fully landscaped. A swimming pool and ramada had been installed on one of them; paving, curbs, sidewalks, gutters, water lines, sewer lines, gas lines, electric lines, telephone lines, grading, and landscaping for the rest of the subdivision were complete. The forty-three (of seventy-seven) residential lots that had been sold contained fully completed residences and were classified as class five property ("used for residential purposes") within A.R.S. § 42–162(A)(5) (Supp. 1989).

On January 1, 1986, Hayden Partners retained ownership of the eight common area tracts and of the thirty-four unsold residential lots. Fourteen of these lots contained fully or partially completed residences; the remaining twenty lots were vacant. The Assessor classified nine of the lots containing fully or partially completed residences as class five residential property. This classification is uncontested. The subject of this appeal is the class four undetermined usage designation given to the remaining five fully or partially completed lots, the eight common area tracts, and the twenty vacant lots.

In a property tax appeal in the superior court, Hayden Partners contested the class four classification of the disputed properties. It contended that these parcels should be classified as class five property pursuant to A.R.S. §§ 42–136(A) and (B)(1980) [now A.R.S. §§ 42–162(A) and (B) (Supp.1989) ] because their use or intended use was residential. The matter was presented on cross-motions for summary judgment, and the trial court granted summary judgment for the Department of Revenue (Department), holding:

that the phrase "intended use" contained in subsection B of A.R.S. § 42–162 refers to a use to be made of the subject property by the person owning the property on the classification date, and does not refer

---

1. The classification of property determines the calculation of its assessed valuation. A.R.S. § 42–227(A)(Supp.1989). Class four property, property of undetermined use, is assessed at sixteen percent of its full cash value. Class five property, property used for residential purposes, is assessed at ten percent of its full cash value. A.R.S. § 42–227(A)(4), (5). The classification

assigned to a particular parcel has significant taxation consequences to its owner, because the amount of the owner's tax is determined by applying the tax rate against the property's assessed valuation. *Hibbs v. Chandler Ginning Co.,* 164 Ariz. 11, 790 P.2d 297, 298 n. 1 (App. 1990).

to a use which *may* be made of the property by a person who may buy that property after the classification date.

The trial court made findings pursuant to Ariz.R.Civ.P. 54(b), and entered a formal judgment in accordance with its ruling. Hayden Partners timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (Supp.1989), and the appeal is assigned to Department T, the tax department of this court, pursuant to A.R.S. § 12–170(C) (Supp.1989).

## CLASSIFICATION OF UNSOLD AND PARTIALLY COMPLETED RESIDENCES

We first consider the classification of the five lots in Villa Antano that contained partially completed or completed but unsold residences as of January 1, 1986. Section 42–162(B) provides that "partially completed or vacant improvements shall be classified according to their intended use." A.R.S. § 42–162(B). The parties agree that the classification of these lots is covered by § 42–162(B), but dispute the meaning of that statute's reference to "intended use."

The Department argues that the statute refers to the use that the owner-taxpayer, in this case a developer, intends to make of its vacant and partially completed improvements. The Department emphasizes that Hayden Partners did not intend to reside in the Villa Antano parcels in 1986; it owned them to develop and sell them. As this intended use was not residential, according to the Department, the property could not properly be placed within class five.

Hayden Partners argues to the contrary that the term "intended use" refers to the end use of property under development and that this use should be determined according to objective physical facts. Hayden Partners relies on *County of Maricopa v. North Central Dev. Co.*, 115 Ariz. 540, 544–45, 566 P.2d 688, 692–93 (App.1977) (partially completed office building held "devoted to commercial use" within former A.R.S. § 42–136(A)(3)), and *Arizona Department of Revenue v. Cyprus–Bagdad Copper Co.*, 122 Ariz. 505, 508, 596 P.2d 31, 34 (1979) (partially completed ore reduction mill properly classified as property of a producing mine within former A.R.S. § 42–136(A)(1) rather than commercial or industrial property under former § 42–136(A)(3)).

We find Hayden Partners' analysis correct. Nothing in A.R.S. § 42–162(B) supports the Department's view that the legislature intended partially completed or vacant improvements to be classified based on the transient mental states of their current owners. The Department seeks support, but finds none, in A.R.S. § 42–221(B) (Supp.1989) (county assessor must determine names of all persons owning, claiming, or having possession or control of property subject to taxation by January 1 of each year). Although that section understandably requires taxing authorities to maintain records of current ownership, it provides no assistance in deciding whether, under A.R.S. § 42–162(B), the intended usage of partially completed or vacant improvements should be decided by reference to the motivating purpose of the current owner or by reference to the property's objective improvement toward a determinable end use.

The Department's argument is likewise unsupported by its reference to A.R.S. § 42–141(A)(5) (Supp.1989) ("In the standard appraisal methods and techniques adopted [by the Department], current usage shall be included in the formula for reaching a determination of full-cash value."). That section concerns valuation in accordance with current usage; section 162(B) concerns classification in accordance with intended use. The former gives no guidance in deciding whether intended use under the latter is decided by a subjective or an objective standard.

The Department additionally relies upon a case that interprets § 42–141(A)(5) (the valuation in light of current usage section), but the case, to the extent that it is pertinent at all, is more helpful to the taxpayer than to the Department. In *Stewart Title and Trust Co. v. Pima County*, 156 Ariz. 236, 751 P.2d 552 (App.1987), taxpayers sought to preserve a beneficial agricultural

designation for land that they had purchased for investment, and they established to the satisfaction of the trial court that, despite their investment purpose, they were devoting the land to current uses that met departmental criteria for agricultural designation. 156 Ariz. at 239, 240, 751 P.2d at 555, 556. On appeal by the taxing authorities, Division 2 of this court held that these objective criteria, rather than the owners' subjective intentions, determined the valuation of the land. 156 Ariz. at 243, 751 P.2d at 559. *Stewart Title* concerns the current usage of land in use, not the intended usage of land under development; thus, it is of little assistance in deciding this case. Yet it demonstrates that current usage determinations under the state tax statutes are made by reference to objective, not subjective, criteria.

We find a similar focus proper under A.R.S. § 42–162(B) when we consider the historical context of its adoption. That section was added to the property tax classification scheme in the wake of the trial court's decision in *County of Maricopa v. North Central Dev. Co.*, 115 Ariz. 540, 566 P.2d 688 (App.1977). When *North Central* was decided, the tax classification statutes made no provision for partially improved property. 115 Ariz. at 542–43, 544, 566 P.2d. at 690–91, 692. The developer-taxpayers in that case challenged the reclassification of their partially completed commercial buildings from class four undetermined use to class three commercial use; they argued that such property could not be classified as devoted to a use until improvements were complete. 115 Ariz. at 544, 566 P.2d at 692. The trial court ruled in the developer's favor. Although this court eventually reversed the trial court's ruling, the Arizona legislature first responded by adding § 162(B) to the tax classification scheme. The evident legislative purpose was to ensure classification of partially improved property according to its objectively ascertainable end use.

Our opinion is bolstered by examining the perverse results that would follow from the Department's interpretation of A.R.S. § 42–162(B). Suppose that a residence were vacated by its owner-mortgagor and acquired by the mortgagee through deed in lieu of foreclosure and that the mortgagee listed the property to be sold. Under the Department's analysis, the home would lose its entitlement to a class five designation while resting vacant on the market, because the mortgagee would own the property to sell and not to live in. Similarly, a newly built but vacant office building, placed by its developer for sale, would qualify for class four undetermined rather than class three commercial status until acquired by an owner that intended to put it to commercial use. We do not believe that the legislature intended such results when it adopted A.R.S. § 42–162(B).

The Department argues, however, that, though a vacant or partially completed residence might ultimately warrant a class five ("used for residential purposes") designation under A.R.S. § 42–162(A)(5), it might instead warrant a class six designation under A.R.S. § 42–162(A)(6) as property "devoted to use as leased or rented property solely for residential purposes." When it cannot be known in advance whether a partially completed or vacant residence is intended for rental or owner-occupancy, the Department argues, the intended usage is too undefined for any designation but class four (property not included in classes one, two, three, five, or six).

Again we disagree. There may be some vacant or partially completed dwellings that are peculiarly designed or adapted to residential rental usage and not to owner occupancy. In the absence of such evidence, however, we conclude that a vacant or partially completed dwelling should be designated within the more general category of property "intended" to be "used for residential purposes" within the meaning of A.R.S. §§ 42–162(A)(5) and (B). Once occupied, the residence should be reclassified as class six property if and when it becomes "devoted to use as leased or rented property solely for residential purposes." A.R.S. § 42–162(A)(6).

To summarize, we conclude that where, as here, property has been manifestly improved toward a determinable residential end use, but where the improvements remain vacant or only partially complete, the

"intended use" of those improvements under § 42–162(B) is determined by an objective, functional standard and not by reference to the motivating purpose of the current owner. We add that this interpretation is consistent with the Department's own articulated policy. In discussion of vacant residential lots owned by a developer, the Department informed the trial court: "The Department's policy and position is that the classification will change from class four to class five residential when construction begins on a residential structure."

## CLASSIFICATION OF COMMON AREA TRACTS

■ The question whether the common areas in Villa Antano were properly classified as class five property turns on whether they were "used for residential purposes ..." within A.R.S. § 42–162(A)(5) as of January 1, 1986. Clearly, these areas were not intended for residential construction; the statute, however, does not require that class five property be "used as a residence" but rather that it be "used for residential purposes." On the facts before us, such a purpose for the eight common area tracts is clear. The Declaration filed by the developer restricted the entirety of Villa Antano to single-family residential use. As of January 1, 1986, the majority of the lots had already been sold to residential owners, and the common area tracts were used by and restricted to the use of Villa Antano residents and their guests. These tracts were thus integrated into a subdivision uncontestably committed to single-family residential use and, in our opinion, undergoing use "for residential purposes" within the meaning of A.R.S. § 42–162(A)(5).

## CLASSIFICATION OF VACANT RESIDENTIAL LOTS

■ It cannot similarly be said that the twenty vacant lots in Villa Antano were being "used for residential purposes" as of January 1, 1986. Although these lots were intended for residential construction, such construction had not started, and they were not undergoing usage for residential purposes. Hayden Partners argues, however, that these lots still qualify as "vacant improvements" under A.R.S. § 42–162(B) and warrant a class five designation in accordance with their objectively demonstrable *intended* residential use. Citing provisions of the Department of Revenue's Land Manual and Assessment Practices Manual, Hayden Partners argues that the Department interprets "improvements" to include such "off-site improvements" as grading, sewers, compacting, landscaping, and utility lines.[2] Because all of the vacant residential lots had undergone improvement of this nature, Hayden Partners argues, those lots should be treated as partially completed improvements intended for residential usage within the meaning of A.R.S. § 42–162(B).

We conclude with Hayden Partners that the term "improvements" in A.R.S. § 42–162(B) does not restrictively refer to buildings or structures. Had the legislature intended to so restrict that statute, it would have employed those more specific terms. We further agree that, pursuant to A.R.S. § 42–162(B), vacant lots that have undergone such "off-site improvements" as these should be classified as class five residential property where clear and objective indicia demonstrate that the property is intended for residential use.

The Department argues that this holding might allow land developers who intend to develop non-residential properties to reap a tax windfall by purchasing land, filing a residential plat for it, putting in minor off-site improvements, and so achieving a beneficial class five assessment. We agree that indulgence of that subterfuge would

2. Hayden Partners cites, for example, the Arizona Department of Revenue Land Manual, which defines "improvements" as "Buildings and other relatively permanent structures *or developments* located upon or attached to the land." Arizona Department of Revenue Land Manual 102 (1984) (emphasis added). This manual discusses improvements as including not only buildings and other structures, but also sewers, drains, landscaping, and similar works. *Id.*

**126**

disserve the public interest and the intent of A.R.S. § 42–162(B). Our holding, however, does not go so far. Considered in isolation, the mere addition of a road or a sewer line or the filing of a plat might leave intended use ambiguous, and entitlement to residential classification would not be shown. That, however, is not the case before us. The vacant lots in Villa Antano

1. had undergone offsite improvements consistent with residential use;

2. were residentially earmarked by the plat and by the declarations filed by the developer; and

3. were surrounded by lots—the majority of lots within the subdivision—already containing occupied or completed residences.

It is the totality of these circumstances that establishes the intended residential use of the vacant Villa Antano lots. In the absence of any evidence of a contrary intended usage, we conclude that they qualify as class five property.

## CONCLUSION

Hayden Partners has established its entitlement to a class five designation to all of the properties disputed in this appeal.

Pursuant to A.R.S. § 12–348 (Supp.1989), Hayden Partners has requested an award of attorneys' fees incurred in the Superior Court and on appeal. We grant the request. *See* A.R.S. § 12–348(A)(2). Hayden Partners may establish the amount of its award by complying with Rule 21, Arizona Rules of Civil Appellate Procedure.

We reverse the contrary judgment of the trial court and remand for proceedings consistent with this opinion.

JACOBSON, P.J., and GERBER, J., concur.