164 P.3d 679

**SUN CITY GRAND COMMUNITY ASSOCIATION, Plaintiff/Appellee,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, Defendant/Appellant.**

No. 1 CA–TX 06–0018.

Court of Appeals of Arizona, Division 1, Department T.

July 26, 2007.

Ekmark & Ekmark, L.L.C. By Curtis S. Ekmark, Angela L. Potts, Eric J. Boyd, Scottsdale, Attorneys for Plaintiff/Appellee.

Andrew P. Thomas, Maricopa County Attorney By Kathleen A. Patterson, Deputy County Attorney, Phoenix, Co–Counsel for Defendant/Appellant.

Law Office of Jerry A. Fries By Jerry A. Fries, Phoenix, Co–Counsel for Defendant/Appellant.

## OPINION

WINTHROP, Judge.

¶ 1 This appeal arises out of the classification of a Sun City Grand clubhouse, golf cart and snack shop building, and surrounding property (collectively "the Subject Property") as a "common area" for purposes of property tax valuation under Arizona Revised Statutes ("A.R.S.") sections 42–13401 to –13404 (2006).[1] The Arizona Tax Court granted a motion for summary judgment, holding that the Subject Property qualifies for common area tax valuation under these provisions. Finding no genuine dispute of material fact or error of law, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Sun City Grand Community Association ("Taxpayer") is a non-profit organization whose members own property in the Sun City Grand planned community. The Subject Property and surrounding area are located within Sun City Grand at 17100 West Clearview in Surprise, Arizona (Parcel No. 232–44–189). Taxpayer's governing documents designate the Subject Property as a "common area."

¶ 3 Each Sun City Grand homeowner is obligated to pay assessments to Taxpayer in order to maintain the Subject Property, and each member has the right to use the Subject Property and to allow invited guests onto the Subject Property. Taxpayer has the right to make rules and regulations governing the Subject Property's use by outside parties. For example, the rules prohibit the public from using the weight room, aerobics room, swimming pools, cabana, whirlpools, business center, and tennis courts. Other access restrictions require the general public to make a reservation, appointment, or tee time for (1) meeting rooms, (2) spa services, and (3) use of the facilities associated with the Cimarron Golf Course.

¶ 4 Taxpayer does allow the general public limited use of portions of the Subject Property. The Sun City Grand Declaration of Covenants, Conditions, and Restrictions states, "Every Owner shall have a right ... of use, access, and enjoyment in and to the Common Area, subject to ... [t]he right of the Board to permit entry upon the Common Area, or to grant licenses permitting the use of the Common Area, by third parties for purposes deemed, in the discretion of the Board, to benefit the Properties...." Taxpayer's Rules and Regulations explain that, primarily through the receipt of charged fees, the community benefits from granting third parties access to the common area.

¶ 5 The revenue earned from the general public's rental of Taxpayer's meeting rooms on the Subject Property was $8,819 in 2004 and $3,151 in 2003. The operators of the Subject Property's day spa estimate that ten to twenty-five percent of the spa's customers were non-residents, but that estimate purportedly includes invited guests of residents.

---

1. We cite the current version of the applicable statutes because no revisions material to this decision have since occurred.

In 2004, Taxpayer attributed $14,412 out of approximately $57,646 in lease revenues from the day spa to the public. In 2003, Taxpayer reported lease revenues of $24,320 from the day spa, but attributed none of that revenue to public use. The golf pro shop did not track the revenue from its sales of goods to the public separately from sales to residents and their invited guests, but estimates that ten to twelve percent came from the general public, or approximately $6,172 in 2003 and $7,871 in 2004. The same approximate percentages likely apply to revenues from the snack shop, a walk-up food and beverage counter adjoining the utility building serving as the golf cart barn.

¶ 6 According to Taxpayer, in 2003, total income for all of its golf and recreation properties was $11,457,713, with $157,948, or approximately 1.4 percent, generated by general public use at the Subject Property. In 2004, the percentage was approximately 1.2 percent, with fees from general public use at the Subject Property amounting to $162,437 out of total golf and recreation property revenues of $13,942,763.

¶ 7 On January 1, 2004, the Maricopa County Assessor ("the Assessor") classified the Subject Property as commercial and set the full cash value for the 2005 tax year at $5,938,624 using standard appraisal methods. Accordingly, property tax for the Subject Property was $130,611.42 in tax year 2005. Had the Assessor valued the Subject Property as a common area under A.R.S. § 42–13403, the resulting property tax would have been less than ten dollars.

¶ 8 Taxpayer unsuccessfully protested the valuation administratively. Next, pursuant to A.R.S. §§ 42–16207 to –16215 (2006), Tax-

payer filed a complaint in the Arizona Tax Court, seeking valuation under A.R.S. §§ 42–13401 to –13404. Taxpayer and the Assessor filed cross-motions for summary judgment regarding whether the Subject Property qualified for common area valuation. The tax court granted Taxpayer's motion and denied the Assessor's motion for reconsideration. The court entered judgment on June 27, 2006, and awarded Taxpayer attorneys' fees in the amount of $30,000 and costs in the amount of $900.70. This timely appeal followed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

### ANALYSIS[2]

I. *As A Matter Of Law, The Subject Property Qualifies For Common Area Valuation Under A.R.S. § 42–13402(B).*

 ¶ 9 We review *de novo* the tax court's grant of summary judgment, *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995), and the interpretation of statutes. *Ariz. Dep't of Revenue v. Salt River Project Agric. Improvement & Power Dist.*, 212 Ariz. 35, 38, ¶ 13, 126 P.3d 1063, 1066 (App.2006). We will affirm if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Additionally, "we liberally construe statutes imposing taxes in favor of the taxpayers and against the government." *Salt River Project*, 212 Ariz. at 38–39, ¶ 14, 126 P.3d at 1066–67 (quoting *State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004)).[3]

---

2. Taxpayer moves to strike portions of the reply brief because the arguments contained therein were not previously raised. We ordinarily decline to consider arguments raised for the first time in a reply brief. *Wasserman v. Low*, 143 Ariz. 4, 9 n. 4, 691 P.2d 716, 721 n. 4 (App.1984). We are not bound by this procedural principle, however, especially when the ultimate issue is the correct interpretation or application of a statute. *See Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993). Therefore, Taxpayer's motion is denied.

3. The Assessor contends that a strict construction standard applies, arguing that, if valued as a

common area, the Subject Property would effectively be exempt from tax. *See Capitol Castings*, 207 Ariz. at 447, ¶ 10, 88 P.3d at 161 (explaining that courts strictly construe tax exemptions because they violate the policy that all taxpayers should share the common burden of taxation). However, Taxpayer owes some tax on the Subject Property; the question is what valuation method applies.

Equally unavailing is the Assessor's reliance on *Recreation Centers of Sun City, Inc. v. Maricopa County*, 162 Ariz. 281, 782 P.2d 1174 (1989). In that case, the Arizona Supreme Court decided whether a deed restriction a the property worth-

¶ 10 The statute setting forth the criteria for common areas, A.R.S. § 42–13402, provides in relevant part as follows:

C. Property must meet all of the following requirements to be considered a common area:

1. The property must be owned by a nonprofit homeowners' association, community association or corporation.

2. The association or corporation must be organized and operated to provide for the maintenance and management of the common area property.

3. All residential property owners in the development must be required to be and must actually be members of the association or corporation, or must be obligated to pay mandatory assessments to maintain and manage the common areas.

4. All members of the association or residential property owners in the development, their immediate families and, if provided by rules of the association or corporation, guests must have a right to use and enjoy the common areas. This right must be appurtenant to and pass with title to each lot and parcel. The association or corporation may assess fees for particular uses of individual common areas.

5. The common areas must be deeded to the association or corporation.

The article incorporating this statute provides the exclusive method for identifying and valuing common areas. A.R.S. § 42–13401. Qualifying property is valued at five hundred dollars per parcel. A.R.S. § 42–13403(B).

¶ 11 The parties' dispute arises primarily out of the meaning of A.R.S. § 42–13402(B), which provides as follows:

*In general,* common areas consist of improved or unimproved real property that is *intended for the use of owners and residents of a residential subdivision or development and invited guests of the owners or residents* and include common beautification areas and common areas used as an airport. Areas that do not qualify as common areas shall be valued using standard appraisal techniques. The following are not considered to be common areas:

1. Common elements of a condominium, as defined in § 33–1202.

2. A golf course, as defined in § 42–13151 and valued pursuant to article 4 of this chapter.

(Emphases added; footnote omitted.) According to the Assessor, A.R.S. § 42–13402(B) requires that the Subject Property be used only by owners, residents, and invited guests. The statute does not include the general public on the list of intended users; accordingly, the Assessor contends that any use by the general public disqualifies the Subject Property as a common area. We disagree.

### A. The Statute's Terms

¶ 12 We begin with the words of the statute itself. *Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.,* 206 Ariz. 1, 5, ¶ 10, 75 P.3d 91, 95 (2003). When possible, we construe a statute in a manner that gives effect to each provision so as to derive the legislative intent manifested by the entire statute. *One Hundred Eighteen Members of Blue Sky Mobile Home Owners Ass'n v. Murdock,* 140 Ariz. 417, 419, 682 P.2d 422, 424 (App.1984). In the absence of a statutory definition, we follow the words' ordinary meaning. A.R.S. § 1–213 (2002); *see State Tax Comm'n v. Peck,* 106 Ariz. 394, 395, 476 P.2d 849, 850 (1970).

¶ 13 According to Webster's Dictionary, the phrase "in general" means "for the most part." Webster's Ninth New Collegiate Dictionary 510 (1988). In this case, the phrase "in general" signifies that A.R.S. § 42–13402(B) describes what intended uses usually qualify a property as a common area. Because this description reflects what is true "for the most part," we do not construe it as comprehensive. Consequently, the phrase "in general" does not preclude valuation of a

---

less and subject to no tax. *Id.* at 284, 782 P.2d at 1177. The court found that a property tax is levied against the property, not the owner, and thus the property had taxable value despite the

restriction. *Id.* at 288–90, 782 P.2d at 1181–83. *Recreation Centers* did not hold that any particular valuation statute applied and did not decide how statutory ambiguities should be construed.

property as a common area if the general public also uses it.

■ ¶ 14 Relying on the statutory construction rule that the express coverage of certain classes implicitly excludes other classes, *see, e.g., Lewis v. Indus. Comm'n,* 93 Ariz. 324, 326, 380 P.2d 782, 783 (1963), the Assessor argues that the identification of a class of intended users in A.R.S. § 42–13402(B) means that other users are not permitted. Therefore, according to the Assessor, actual use by the general public precludes application of the common area valuation statutes.[4] We disagree.

¶ 15 Throughout the briefing, the Assessor emphasizes the actual use of the property. But A.R.S. § 42–13402(B) references only intended use. We interpreted the phrase "intended use" in *Hayden Partners Ltd. P'ship v. Maricopa County,* 166 Ariz. 121, 123, 800 P.2d 987, 989 (App.1990), *superseded by statute on other grounds as recognized by Waddell v. 38th St. P'ship,* 173 Ariz. 137, 840 P.2d 313 (Tax 1992). In that case, we criticized the taxing authority for relying on a case focusing on "current usage" of land and not its "intended usage." *Id.* at 123–24, 800 P.2d 987, 800 P.2d at 989–90 (citing *Stewart Title & Trust Co. v. Pima County,* 156 Ariz. 236, 239–40, 243, 751 P.2d 552, 555–56, 559 (App. 1987), *superseded by statute on other grounds as recognized in RenalWest L.C. v. Ariz. Dep't of Revenue,* 189 Ariz. 409, 943 P.2d 769 (App.1997)). The fact that subsection (B) of A.R.S. § 42–13402 provides in general terms the classes of persons for whom the common areas are intended does not preclude the actual use by another class of persons, such as the general public. When the Arizona Legislature wants to require actual or current use, it does so expressly. *See* A.R.S. § 42–13402(D) (defining the term "airport" to mean "runways and taxiways that are used primarily by residents of the residential subdivision").

¶ 16 Moreover, the provision immediately following A.R.S. § 42–13402(B) prescribes the specific requirements for property to be considered a common area. According to A.R.S. § 42–13402(C), the property "must meet all of the following requirements" listed in that subsection to qualify as a common area. Reading these provisions as a whole and harmonizing them, we conclude that the description in A.R.S. § 42–13402(B) is not mandatory; a contrary interpretation would require us to engraft that subsection onto the mandatory requirements of A.R.S. § 42–13402(C). *See Bills v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 494, ¶ 18, 984 P.2d 574, 580 (App.1999) (explaining that we construe related statutes in the context of the overall statutory scheme and seek to achieve consistency among the statutes). Following the well-established rule that a specific statutory provision controls over a general one, *e.g., City of Phoenix v. Superior Court,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984), we conclude that A.R.S. § 42–13402(C) alone provides the minimum requirements for the qualification of property as a common area.

¶ 17 When the legislature wishes to disqualify a property from common area status, it says so expressly. For example, in A.R.S. § 42–13402(B)(1) and (2), the legislature has specified that uses as a condominium or golf course prevent common area valuation. Further, a recorded deed restriction is "a condition for valuation under this article," A.R.S. § 42–13404(A), and standard appraisal methods and techniques will apply "[i]f the property is converted to a different use in violation of the restrictions." A.R.S. § 42–13404(B). There is no similar language disqualifying property based on use by the general public.

*B. The Statute's Legislative History*

¶ 18 Our interpretation finds further support in the legislative history of A.R.S. § 42–

---

4. As we have recognized, to advance its arguments under A.R.S. § 42–13402(B), the Assessor invokes the statutory construction rule that the inclusion of certain classes implicitly excludes other classes. However, the rule works to the Assessor's disadvantage in the context of A.R.S. § 42–13402(C). It undermines the Assessor's effort to engraft a new requirement onto that stat-

ute excluding actual use by the general public. We employ this statutory construction principle only to aid in determining the drafters' intent; "it should not be applied when context and public policy contradict it." *State v. Williams,* 209 Ariz. 228, 236, ¶ 31, 99 P.3d 43, 51 (App.2004) (citations omitted).

13402. Resort to legislative history is appropriate when a statute is ambiguous. *See State ex rel. Ariz. Dep't of Revenue v. Phoenix Lodge No. 708, Loyal Order of Moose, Inc.*, 187 Ariz. 242, 247–48, 928 P.2d 666, 671–72 (App.1996). We interpret ambiguities in tax statutes in the taxpayer's favor and will not strain the words for the sake of imposing a tax. *Id.* at 247, 928 P.2d at 671 (citing *Wilderness World*, 182 Ariz. at 199, 895 P.2d at 111).

¶ 19 Members of the Arizona Legislature contemplated requiring that residents—or owners, residents, and invited guests—be the exclusive users of a common area, but the idea was specifically rejected twice. In 1999, the original version of Senate Bill 1264 provided in relevant part as follows:

42–13351. *Definition of residential common area*

A. In this article, unless the context otherwise requires, "Residential Common Area" means property meeting the following requirements:

1. Improved or unimproved real property that is restricted for the current *exclusive use and benefit of the residents* of a residential subdivision, as defined in section 32–2101, including tracts and beautification strips required by zoning entities for approval of residential subdivision plats, and that is not used for commercial purposes.

S. 1264, 44th Leg., 1st Reg. Sess. (Ariz.1999) (emphasis added). Before that bill was enacted, however, a bill was introduced and passed that incorporated several changes from Senate Bill 1264, including removing the word "exclusive" and the term "not used for commercial purposes" and replacing the word "restricted" with the word "intended." *See* S. 1372, 44th Leg., 1st Reg. Sess. (Ariz. 1999). Senate Bill 1372 also included the insertion of the phrase "in general" before describing the intended use of common areas and added the five-part test for property to be considered a common area. Thus, members of the Arizona Legislature expressly considered and rejected a provision requiring exclusive use by property residents.

¶ 20 Similarly, in 2001, House Bill 2021 initially defined a common area as "improved or unimproved real property that is intended for the primary use of owners and residents of a residential subdivision or development and invited guests of the owners or residents." H.R.2021, 45th Leg., 1st Reg. Sess. (Ariz.2001). The Assessor requested during a committee hearing that the committee replace the word "primary" with the word "exclusive." *Meeting of the H. Comm. on Military, Veteran Affairs and Aviation*, 45th Leg., 1st Reg. Sess. 4 (Ariz. Jan. 25, 2001). Although the Committee voted to substitute the word "exclusive" for the word "primary," the word "exclusive" was removed before the bill became law. H.R.2021, 45th Leg., 1st Reg. Sess. (Ariz.2001) (House Engrossed Version). The Assessor's request signals an apparent belief that the statute did not already require proof of exclusive use; otherwise, the proposed amendment would be superfluous. In any event, we decline to now construe these statutes in a manner twice specifically rejected by members of the Arizona Legislature.

¶ 21 The Assessor makes much of the fact that the Arizona Legislature amended A.R.S. § 42–13402(D) to define "airport" to mean "runways and taxiways that are used *primarily* by residents of the residential subdivision but that may be designated as a reliever airport by the federal aviation administration and that receives no public funding." (Emphasis added.) H.R.2021, 45th Leg., 1st Reg. Sess. (Ariz.2001). During the amendment process, the Assessor advocated an amendment to require exclusive use, but the legislature refused to comply. *Hearing on H.B.2021 Before the H. Comm. on Ways & Means*, 45th Leg., 1st Reg. Sess. 5–6 (Ariz. Jan. 30, 2001). Thus, the amendment process only underscores the legislature's conscious rejection of any exclusive use requirement.

¶ 22 The Assessor also argues that Taxpayer is putting the Subject Property to commercial use without paying taxes commensurate with that use. The problem with this argument is that members of the legislature already expressly rejected an attempt to prohibit commercial uses of common areas. Consequently, we decline to reverse on this basis.

¶ 23 Finally, we agree with Taxpayer that the Assessor's construction of these statutes could lead to absurd results. Even minimal public use could destroy the common area benefit for an entire community. Further, it is unrealistic to expect the community to exhaustively police such usage. As Taxpayer points out, common areas are often accessible by public streets and can be used by the general public even without the community's knowledge. Holding communities to such an impractical standard, absent express legislative direction, is a burden we decline to impose. *See Walgreen Ariz. Drug Co. v. Ariz. Dep't of Revenue,* 209 Ariz. 71, 75, ¶ 18, 97 P.3d 896, 900 (App.2004) (citing *Am. Tel. & Tel. Co. v. Dir., Div. of Taxation,* 194 N.J.Super. 168, 476 A.2d 800, 802 (Ct.App.Div.1984) (declining to construe a statute in a manner leading to absurd results)).

¶ 24 We therefore conclude that A.R.S. § 42–13402 does not require owners, residents, and invited guests to be the claimed common property's exclusive users. It is enough that the Subject Property (1) in general, is intended for use by owners, residents, and invited guests; and (2) satisfies the five criteria in A.R.S. § 42–13402(C). If so, the Subject Property qualifies for common area valuation and, under A.R.S. § 42–13403(A), valuation "shall be made on the assumption that no other property use is possible." The general public's relatively *de minimis* actual use does not preclude a common area valuation.

II. *As A Matter Of Law, The Subject Property Qualifies For Common Area Valuation Under A.R.S. §§ 42–13402(C) and 42–13404(A).*

¶ 25 In order to qualify the Subject Property for valuation as a common area under A.R.S. §§ 42–13401 to –13404, Taxpayer must satisfy the five requirements of A.R.S. § 42–13402(C). The Assessor contends that Taxpayer fails to satisfy A.R.S. § 42–13402(C)(4), which provides as follows:

All members of the association or residential property owners in the development, their immediate families and, if provided by rules of the association or corporation, guests must have a right to use and enjoy the common areas. This right must be appurtenant to and pass with title to each lot and parcel. The association or corporation may assess fees for particular uses of individual common areas.

¶ 26 The Assessor maintains that Taxpayer does not qualify under this provision because Taxpayer has also extended the right to use the Subject Property to the general public. But the mere fact that owners and families have a "right" to use the Subject Property does not necessarily mean that others may not use it. As the tax court observed, had the Arizona Legislature desired a subjective analysis of whether the Subject Property was intended for the exclusive use of owners, residents, and guests, the legislature would have included that requirement in A.R.S. § 42–13402(C). Further, the fact that members of the legislature expressly declined to restrict common areas to non-commercial uses indicates that some actual commercial use, including use by the public, was contemplated.

¶ 27 The Assessor further argues that Taxpayer does not properly comply with A.R.S. § 42–13404(A)'s directive to record and file a deed restriction limiting the Subject Property's use to a common area because Taxpayer's governing documents do not restrict use of the Subject Property exclusively to owners, residents, and their guests. However, contrary to the Assessor's argument and as we have discussed, Taxpayer need not restrict the Subject Property in the manner advocated by the Assessor, and we find no indication in this record that Taxpayer has otherwise failed to comply with the requirements of A.R.S. § 42–13404(A). The fact that Taxpayer has also enacted rules and regulations governing public use does not vitiate its compliance with A.R.S. § 42–13404(A).

**CONCLUSION**

¶ 28 We affirm the tax court's grant of summary judgment. Under A.R.S. §§ 42–16213(B)(1) and –16214(A)(3), Taxpayer is entitled to recover an amount equal to the excess in taxes levied and assessed, plus any

applicable interest, together with the costs of the appeal. In addition to costs, we award Taxpayer its reasonable attorneys' fees incurred in this appeal pursuant to A.R.S. § 12–348(B)(1) and (E) (2003), subject to Taxpayer's compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: JON W. THOMPSON, Presiding Judge and PATRICK IRVINE, Judge.