59 P.3d 843

**U–STOR BELL, L.L.C. an Arizona limited liability· company, dba U– Stor Bell, Plaintiff–Appellee,**

**v.**

**MARICOPA COUNTY, a body politic and corporate, Defendant–Appellant.**

**Asi Self Storage, L.L.C., an Arizona limited liability company, dba Arizona Storage Inns, Plaintiff–Appellee,**

**v.**

**Maricopa County, a body politic and corporate, Defendant–Appellant.**

**Amerco Real Estate Company, Inc., a Nevada corporation, dba U–Haul Center Oracle, U–Haul Center East Speedway, U–Haul Center West Ina Road, Plaintiff–Appellee,**

**v.**

**Pima County, a body politic and corporate, Defendant– Appellant.**

**No. 1 CA–TX 01–0013.**

Court of Appeals of Arizona, Division 1, Department T.

Dec. 26, 2002.

Janet Napolitano, Attorney General, By Frank Boucek, III, Assistant Attorney General, Phoenix, Attorneys for Defendants/Appellants.

Thomas J. Zavada, Pima County Attorney, By Alison K. North, Deputy County Attorney, Tucson, Attorneys for Defendant/Appellant.

Steptoe & Johnson, LLP By Patrick Derdenger, Bennett Evan Cooper, Phoenix, Attorneys for Plaintiffs/Appellees.

SNOW, Judge.

¶ 1 The appellee taxpayers are owners of self-storage facilities. Each of their facilities incorporates an apartment in which the facility manager must live as a condition of employment ("manager apartments"). For *ad valorem* property tax purposes for the tax years 1998 through 2001, Maricopa and Pima

Counties ("the counties") classified the taxpayers' self-storage facilities, including those portions used as manager apartments, as class one commercial property.[1]

¶2 When the taxpayers challenged this classification, the tax court granted summary judgment in their favor. It determined that the manager apartments should instead be classified as class four property "used solely as leased or rented property for residential purposes." A.R.S. § 42–12004(A)(1) (Supp. 2001) (renumbering property classes so former property class six is now referred to as class four).[2] *See also* A.R.S. § 42–12006(A)(1) (1999). The counties appeal. We agree that the tax court's determination was in error and reverse.

## FACTUAL AND PROCEDURAL HISTORY

¶3 The taxpayers operate each of their self-storage facilities as a for-profit commercial enterprise. Each of the taxpayers' self-storage facilities has storage units of various sizes that the taxpayers rent to members of the public who use them to store tangible personal property.

¶4 Most self-storage facilities have an office area for the manager's use. Some self-storage facilities, including the taxpayers', also have manager apartments. For purposes of this action, the parties have stipulated that each taxpayer requires its on-site managers to reside in the manager apartments "for the purpose of both managing the mini-storage facility and providing security for the premises." Any on-site manager whose employment ends must vacate the manager apartment so that a new on-site manager may move in.

¶5 The taxpayers separately brought these actions in the tax court to challenge the commercial classification of their self-storage facilities. The actions were later consolidated. On cross-motions for summary judgment based on stipulated statements of facts, the tax court sustained the counties' class one commercial classifications of the taxpayers' self-storage facilities.

¶6 The taxpayers moved for reconsideration to the extent that the tax court's ruling had sustained the class one classifications for the manager apartments included in those facilities. The tax court, applying *Hayden Partners Limited Partnership v. Maricopa County*, 166 Ariz. 121, 125–26, 800 P.2d 987, 991–92 (App.1990), ruled that the manager apartments should have been classified as class four leased or rented "residential property" because the circumstances establish objective indicia of intended residential use.

¶7 The tax court entered judgment in accordance with its rulings. The counties timely appealed. The taxpayers each cross-appealed from the tax court's determination that the counties had correctly classified all storage units as commercial property. All cross-appeals were later dismissed by stipulation in this Court. We have appellate jurisdiction. A.R.S. § 12–2101(B) (1994).

## DISCUSSION

¶8 The determinative question is whether the taxpayers' manager apartments are "used solely as leased or rented property for residential purposes" within A.R.S. § 42–12004(A)(1). The taxpayers, citing *Krausz v. Maricopa County*, 200 Ariz. 479, 481, ¶11, 28 P.3d 335, 337 (App.2001), argue that due to the use made of the manager apartments, they should be classified as class four leased residential property instead of the more generally applicable class one commercial property. We cannot agree.

1. For tax years 1998 and 1999, this classification was denominated as class three pursuant to former Arizona Revised Statutes ("A.R.S.") § 42–12003 (1999). For tax years 2000 and following, this classification is denominated as class one. A.R.S. § 42–12001(12) (Supp.2001). To facilitate application of this opinion in the future, we refer to property within this classification as "commercial" or "class one" property throughout.

2. The classification of taxable property is significant in determining the ultimate tax liability associated with the property. For class one property, the tax rate determined by the taxing entity or entities is applied to twenty-five percent of the property's full cash value to yield the amount of the tax owed. For class four property, the corresponding percentage is ten percent. A.R.S. §§ 42–15001, 42–15004 (Supp.2001).

¶ 9 *Krausz* supplies a useful comparison but is not directly applicable here. In *Krausz,* the appellants contended that a private building that they leased to the Arizona Department of Environmental Quality ("ADEQ") could not properly be classified as class one commercial property. The *Krausz* appellants so alleged because they claimed that the sole use that ADEQ actually made of the property was a "governmental" use. Appellants made this argument even though no statute recognized a separate tax classification for governmental use.

¶ 10 Noting that the taxpayer's lease of the property to the government was a commercial use of the property by the taxpayer and further noting that there were no separate statutory property tax classifications for property used for governmental purposes, this Court upheld the class one commercial classification on the property.

> [I]n all [Taxpayers'] hypotheticals the tenant's use of the property brought it within a *specific* property tax classification, thereby controlling the outcome. The situation in Taxpayers' case is quite different. Here, it is only the landlords' use of the property that places it within a property tax classification. Taxpayers lease their building for profit, and thereby put it to a commercial use within the meaning of A.R.S. section 42–12001(12). It is only the tenant, ADEQ, that puts the leased building space to a governmental use, which does not fall within the terms of any specific property tax classification that would override section 42–12001(12). Accordingly, Taxpayers' property is "devoted to ... any commercial ... use" and is properly classified as class one (commercial) property. A.R.S. § 42–12001(12).

*Id.* at 481–82, ¶ 11, 28 P.3d at 337–38.

¶ 11 Here, similar to *Krausz,* the question is whether the property at issue qualifies for a class four statutory tax classification. To do so, the managers' apartments must be "used solely as leased or rented property for residential purposes." A.R.S. § 42–12004(A)(1). Otherwise, the property is appropriately classified as class one commercial property "devoted to any other commercial or industrial use." A.R.S. § 42–12001(12).

¶ 12 We conclude that the apartments were neither used solely as leased or residential property for residential purposes, nor were they "leased or rented" as that term is used in the statute.

¶ 13 It is true that the taxpayers' on-site managers use the manager apartments as their residences. However, manager apartments are not offered for public occupancy. Manager apartments are occupied exclusively by persons who are actively employed as managers of the self-storage facilities where the apartments are located. Such persons may continue to occupy their apartments only while they are so employed, and must vacate them when their employment ends.

¶ 14 Here the parties have stipulated that each taxpayer requires its on-site managers to reside in a manager apartment "for the purpose of both managing the mini-storage facility and providing security for the premises." In a similar context, our supreme court has concluded that employer-required living quarters constitute the ongoing site from which the occupant conducts the employer's business even after traditional work hours:

> The authorities are agreed that if an employer furnishes living accommodations for an employee and requires him to occupy the same while employed, the continuity of employment is not broken while he is actually using and occupying the premises for the purpose for which it was furnished. In other words, under such circumstances he is still within the orbit of his employment while using the premises for living quarters, even though he be off duty from regular shift. The reason for this is that if his employer requires such occupancy, the same is an incident to the obligation of his regular employment. The activity of using such housing accommodations is exercised as an incident to the performance of his duties to the employer.

*Johnson v. Ariz. Highway Dep't,* 78 Ariz. 415, 417, 281 P.2d 123, 125 (1955) (citation omitted).

¶ 15 Thus, as *Johnson* suggests, the employee's use of the manager's apartment is incidental to the performance of his duties to the employer. Consequently, on-site manag-

ers do not occupy their apartments solely for residential purposes. Additionally, the taxpayers retain in no small measure the "use" of the manager apartments. Acting through their mandatorily resident managers, the taxpayers use the manager apartments as an on-site base by which the taxpayers have their managers manage and provide security for their self-storage enterprises. Thus, the manager apartments cannot reasonably be viewed as "used *solely* as leased or rented property for residential purposes" within A.R.S. § 42–12004(A)(1) (emphasis added).

¶ 16 Contrary to the taxpayers' assertion, the tax court did not "rule" that the manager apartments are "used . . . solely for residential purposes." The tax court, which did not have the benefit of our opinion in *Krausz*, relied on *Hayden Partners Limited Partnership v. Maricopa County*, 166 Ariz. 121, 800 P.2d 987, to find that the property had "indicia of intended residential use." [3] While we can agree with the tax court that there are indicia of residential use in this case, that alone is not sufficient to qualify for a class four property tax classification under the statute. Taxpayers must use the property "solely as leased or rented property for residential purposes." A.R.S. § 42–12004(A)(1).

¶ 17 In addition to the fact that the apartments in this case are not solely leased or rented for residential purposes, they are also neither "leased" nor "rented" as those terms are used in A.R.S. § 42–12004(A)(1). As the United States Court of Appeals for the Tenth Circuit has stated:

The general rule is that when an employee occupies a house on the premises of his employer, and that occupancy is merely incidental to his employment, the relationship of landlord and tenant does not exist; rather, the rights and liabilities of the parties are governed by the law of master and servant.

*Moreno v. Stahmann Farms, Inc.*, 693 F.2d 106, 107 (10th Cir.1982).

¶ 18 Pertinent Arizona statutory and administrative law likewise is at odds with the proposition that the taxpayers lease or rent their apartments to their on-site managers. The Arizona Residential Landlord and Tenant Act, A.R.S. §§ 33–1301 through 33–1381 (2000 and Supp.2001), governs all residential landlord and tenant rights and obligations in Arizona. The Act specifically excludes from its intended scope "[o]ccupancy by an employee of a landlord as a manager or custodian whose right to occupancy is conditional upon employment in and about the premises." A.R.S. § 33–1308(5) (2000).

¶ 19 Further, the value of employer-provided housing is not included as part of an employee's wages for the purpose of computing unemployment insurance if the housing is provided on the employer's business premises for the employer's convenience and the employee must accept it as a condition of his employment. Ariz. Admin. Code R6–3–1727(A) & (B).[4]

¶ 20 As we intimated in *Krausz*, it was ordinary landlords' use of their property for the production of rental income that prompted the legislature to adopt A.R.S. § 42–

---

3. *Hayden Partners* concerned the proper classification of unsold and partially completed residences and vacant lots slated for residential development. It was in that context that the court in *Hayden Partners* held: "[W]here . . . property has been manifestly improved toward a determinable residential end use, but where the improvements remain vacant or only partially complete, the 'intended use' of those improvements under § 42–162(B) is determined by an objective, functional standard and not by reference to the motivating purpose of the current owner." 166 Ariz. at 124–25, 800 P.2d at 990–91. However, this "intended use" analysis has no application in this case, in which the actual use of manager apartments is known and the question is one of interpreting the scope and meaning of competing categories of statutory classification.

4. The taxpayers cite *Myrtle Manor Apartments v. City of Phoenix*, 177 Ariz. 465, 868 P.2d 1048 (App.1994), as supporting their argument that a landlord-tenant relationship results when the employer requires an employee to live in provided living quarters during the term of employment. To the contrary, however, *Myrtle Manor*, which involved an on-site manager's apartment in an apartment complex, stands for the proposition that, because the employer receives value by having the employee live in the required quarters, income in the amount of the fair rental value of the living quarters can be attributed to the *employer*, not the employee, for tax purposes. Because *Myrtle Manor* involves a question of income allocation to the employer, it does not support the taxpayers' argument that a landlord-tenant relationship results.

12004(A)(1) and its predecessors to avoid commercial classification of such property. In this case the taxpayers' special commercial use of their manager apartments is qualitatively different from the more common use that the legislature sought to remove from commercial classification.

¶ 21 Neither the taxpayers nor their on-site managers use the manager apartments "solely" for residential purposes. Further, the taxpayers do not "lease" or "rent" the manager apartments to their on-site managers within the ordinary meaning of those terms. The taxpayers' manager apartments therefore do not come within the intended scope of the "exception" to commercial classification provided by A.R.S. § 42–12004(A)(1).

**CONCLUSION**

¶ 22 The tax court erred in determining that the taxpayers' manager apartments should properly have been classified as class four property. The judgment, therefore, is reversed and remanded for further proceedings consistent with this opinion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and CECIL B. PATTERSON, JR., Judge.