SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| CNL HOTELS AND RESORTS, INC., a Maryland corporation; and MARRIOTT DESERT RIDGE RESORT, LLC, a Delaware limited liability company, | ) Arizona Supreme Court ) No. CV-11-0072-PR ) ) Court of Appeals ) Division One ) No. 1 CA-TX 09-0003 |
| Plaintiffs/Appellants, | ) |
| v. | ) Arizona Tax Court ) Nos. TX2007-000057 ) TX2007-000177 |
| MARICOPA COUNTY, a political subdivision of the State of Arizona, | ) (Consolidated) ) ) ) |
| Defendant/Appellee. | ) **O P I N I O N** ) ) |
| _____ | ) |

Appeal from the Arizona Tax Court
The Honorable Dean M. Fink, Judge and Thomas Dunevant, Retired
Judge

**VACATED AND REMANDED**
_____

Opinion of the Court of Appeals Division One
226 Ariz. 155, 244 P.3d 592 (2010)

**VACATED**
_____


BALLARD SPAHR LLP                                          Phoenix
     By   Brian W. LaCorte
          Joseph A. Kanefield

And

GALLAGHER & KENNEDY, P.A.                                  Phoenix
     By   Mark A. Fuller
          James G. Busby, Jr.
Attorneys for CNL Hotels and Resorts Inc and Marriott Desert
Ridge Resort LLC

HELM LIVESAY & KYLE LTD                                    Tempe
      By   Roberta S. Livesay
           Raushanah Daniels
Attorneys for Maricopa County

LASOTA & PETERS, PLC                                      Phoenix
      By   Donald M. Peters
           Kristin M. Mackin
Attorneys for Amicus Curiae Arizona Association of School
Business Officials

GUST ROSENFELD P.L.C.                                     Phoenix
      By   David A. Pennartz
Attorney for Amicus Curiae Paradise Valley Unified School
District No. 69

JONES SKELTON & HOCHULI, P.L.C.                           Phoenix
      By   Timothy J. Bojanowski
Attorney for Amici Curiae Rodger Dahozy, Philip S. Leiendecker,
Chris Mazon, Darlene Adler, Linda Durr, Keith E. Russell, Cammy
Darris, William Staples, Paul Larkin, Felipe A. Fuentes, Jr.,
Pamela J. Pearsall, and Joe Wehrle

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                Phoenix
      By   Paula S. Bickett, Chief Counsel, Civil Appeals
           Daniel P. Schaack, Assistant Attorney General
Attorney for Amicus Curiae State of Arizona
_____

**B R U T I N E L**, Justice

¶1      Improvements on land leased from the state qualify for a reduced ad valorem tax rate if they "become the property of the . . . state . . . on termination of the leasehold interest in the property."  A.R.S. § 42-12009(A)(1)(a) (2009).  We hold that this provision applies when, at the time of taxation, improvements exist on the land that, under the terms of the lease, would become the state's property upon lease termination.

2

¶2      In 1993, the predecessor-in-interest to CNL Hotels and Resorts Inc. ("CNL") entered into two ninety-nine year leases of state trust land to build the Desert Ridge Resort and Spa and adjacent golf course.  The leases provide that the property "may only be used for the construction, operation, maintenance, renovation and/or reconstruction of a hotel or other similar resort facility."  Although CNL owns all structures and improvements on the land, at lease termination, CNL must "surrender peaceable possession of the [p]remises," including the improvements, and quitclaim to the state "any right, title or interest in the leasehold."  During each lease term, CNL has the right "to remove or demolish all or any part of" improvements on the property without any obligation to reconstruct them.

¶3      After the leases were entered into, the legislature created a property tax classification ("Class Nine") in which property is taxed at a rate of one percent, significantly lower than that generally applicable to commercial property.  *See* A.R.S. §§ 42-12001, -12009 (defining Class One and Class Nine properties); A.R.S. §§ 42-15001, -15009 (prescribing lower tax rate for Class Nine than for Class One).  From 2003 through 2006, the tax years at issue here, Maricopa County classified the Desert Ridge improvements under Class One, the

classification applicable to general commercial property, and taxed CNL accordingly.

¶4        CNL appealed the County's 2006 tax assessment to the State Board of Equalization, requesting Class Nine classification. The Board denied the request, concluding that the improvements would not "unequivocally become the property of the state" when the leases ended. CNL then filed a declaratory judgment action in the tax court. The County moved for summary judgment, arguing that Class Nine did not apply because CNL had the unqualified right to remove or destroy improvements during the lease term. Neither the County's motion nor CNL's response addressed whether Desert Ridge is used primarily for the purposes described in § 42-12009(A)(1)(b) (the "primary use requirement") or the appropriate tax classification of the golf course. *See* § 42-12001(9) (including golf course property within Class One); § 42-12002(1)(d) (including golf courses within Class Two). The tax court granted summary judgment for the County based on CNL's failure to meet the requirements of § 42-12009(A)(1)(a).

¶5        The court of appeals reversed and directed the tax court to instead enter summary judgment for CNL. *CNL Hotels & Resorts, Inc. v. Maricopa Cnty.*, 226 Ariz. 155, 164 ¶ 41, 244 P.3d 592, 601 (App. 2010). It held "that § 42-12009 requires the existence of a demonstrable reversionary interest at the

4

time of taxation," *id*. at 160 ¶ 19, 244 P.3d at 597, and that the CNL leases meet this requirement, *id*. at 162 ¶ 29, 244 P.3d at 599. It further concluded that the evidence in the record supported the tax court's "finding" that CNL meets the primary use requirement. *Id*. at 163 ¶ 35, 244 P.3d at 600. Moreover, the court of appeals held that the County had waived review on the primary use issue by not cross-appealing. *Id*. at 163-64 ¶¶ 37-38, 244 P.3d at 600-01. The court also rejected the County's argument that CNL was not entitled to seek relief for back taxes under A.R.S. § 42-16251(3), the "error correction" statute. *Id*. at 162-63 ¶¶ 30-33, 244 P.3d at 599-600.

¶6 We granted review to address issues of statewide importance concerning the interpretation of the property tax statutes.

## II.

### A.

¶7 The first issue involves the proper interpretation of § 42-12009(A)(1)(a), which applies Class Nine to:

1. Improvements that are located on federal, state, county or municipal property and owned by the lessee of the property if:

   a. The improvements become the property of the federal, state, county or municipal owner of the property on termination of the leasehold interest in the property.

   b. Both the improvements and the property are used primarily for athletic, recreational,

5

entertainment, artistic, cultural or convention activities.

¶8 To qualify for Class Nine tax status, improvements on government land must become the governmental landowner's property on the lease's termination. The parties dispute, however, whether Class Nine applies to improvements that may no longer exist at the end of a lease, although they will become the government's property if they do. CNL asserts, and the court of appeals held, that sub-paragraph (a) requires only that the taxed improvement will become government property if it exists upon lease termination. *See CNL Hotels*, 226 Ariz. at 160 ¶ 18, 244 P.3d at 597 (requiring tax assessment to focus "on the present existence of a demonstrable reversionary interest").[1] The County, however, argues that the Class Nine statute also requires proof the improvement will in fact exist at the end of the lease.

¶9 Both readings are consistent with the language of § 42-12009(A)(1)(a); the statute does not specify whether Class Nine status requires certainty that the government lessor will receive now-existing improvements when the lease later terminates. Because § 42-12009(A)(1)(a) is subject to "two

---

[1]The parties and courts below use the term "reversionary interest" to describe the sub-paragraph (a) requirement of future ownership, but this terminology is technically inaccurate because the government could not hold a "reversionary" interest in improvements it did not previously own.

plausible interpretations," it is ambiguous. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). Accordingly, we must interpret the statute in light of its "context, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Id*.

¶10    We conclude that CNL's interpretation is the more reasonable one. Section 42-12009 is a property tax statute. Our property tax laws generally do not assign immutable tax classifications; instead, property taxes are assessed annually. *See* A.R.S. § 42-13051 (requiring tax assessor to yearly list property and assess its value for purposes of the tax roll). Because a property's appropriate classification is reevaluated each year the property is taxed, § 42-12009 is reasonably interpreted as contemplating that tax classifications will consider the circumstances at the time of taxation. Speculating about hypothetical future events is unnecessary. If the government landowner's right to receive the improvement at the termination of the lease, in fact, terminates, so will the taxpayer's entitlement to Class Nine status.

¶11    The County's interpretation also creates administrative difficulties. Tax assessors would be required to scrutinize each lease, covenant, contract, and statute governing the leasehold to determine whether a future contingency could prevent the lessor from actually receiving the improvement. *See*

7

*Killebrew v. Indus. Comm'n of Ariz.*, 65 Ariz. 163, 168, 176 P.2d 925, 928 (1947) (considering "difficulties in the practical operation of the law" to discern correct interpretation of statutory text). The County's position would also likely require tax assessors to inquire into rebuilding requirements in the event of natural or manmade disasters such as fire, flood, earthquake, war, or terrorist attack.

¶12     The County's rationale for its interpretation is equally unpersuasive. It contends that unless the state actually receives the improvement taxed under § 42-12009, it will not receive sufficient economic value to justify the lessee's tax benefit. We disagree.

¶13     The County characterizes the state's future ownership as consideration for the one percent tax rate the lessee receives. But neither § 42-12009 nor the property tax scheme generally evinces any legislative intent to require taxpayers to compensate the government when they benefit from favorable tax rates. And in any event, it was not unreasonable for the legislature to determine that reducing property taxes for Class Nine would benefit the state by encouraging the lease of government land and spurring development. *See* Ariz. Const. art. 10, §§ 1-11 (prescribing management of state trust lands); *see also Turken v. Gordon*, 223 Ariz. 342, 348 ¶ 23, 349 ¶ 29, 224 P.3d 158, 164, 165 (2010) (acknowledging that city council could

8

reasonably conclude increased tax base benefits public).

¶14     In contrast, the court of appeals' and CNL's interpretation of subsection (A)(1)(a) avoids these analytical and administrative pitfalls.  Similarly, it comports with the state's duty to responsibly manage trust land.

¶15     Reading § 42-12009(A)(1)(a) to require only that, at the time of taxation, an improvement exist on the land that, under the terms of the lease, would become the property of the government landowner at the lease's termination results in a statute that is easy to apply and understand.  Tax assessors would be faced with a manageable task, consistent with their statutorily defined duties.  *See* § 42-13051 (describing duties of county tax assessors as determining names of owners and cash value of properties).  Their inquiry would be limited to examining each tax year what exists on the land and determining whether the government landowner at that time has the right to own any improvements upon termination of the lease.

¶16     Applying this interpretation, CNL has satisfied § 42-12009(A)(1)(a)'s future ownership requirement.  Desert Ridge sits on state trust land.  Upon the termination of each lease, CNL must quitclaim the premises, including any improvements, to the state.

**B.**

¶17     The County also argues that the court of appeals erred in ordering summary judgment in favor of CNL because no evidence was presented to show CNL met the primary use requirements of § 42-12009(A)(1)(b).  The County's motion for summary judgment had specifically reserved the right to litigate that issue, and the County asks that we vacate the court of appeals' opinion, allowing it to litigate whether Desert Ridge is used primarily for "athletic, recreational, entertainment, artistic, cultural or convention activities."  § 42-12009(A)(1)(b).

¶18     In granting the County's motion for summary judgment, the tax court stated that CNL met the primary use requirement, but did not explain this assertion or cite any authority or evidence supporting it.  The court of appeals interpreted the tax court's statement as a finding establishing primary use even though this issue had neither been briefed nor argued in the tax court.

¶19     "[I]t is incorrect to direct entry of summary judgment on issues not raised by the movant in the trial court and on which the parties have therefore not had an opportunity to marshal and present evidence."  *City of Phoenix v. Yarnell*, 184 Ariz. 310, 320, 909 P.2d 377, 387 (1995).  The County, therefore, is entitled to fully litigate this issue in the tax court on remand.

¶20     The court of appeals also erred in concluding that the County was required to file a cross-appeal on the primary use issue.  *CNL Hotels*, 226 Ariz. at 163-64 ¶ 37, 244 P.3d at 600-01.  Arizona's long-settled rule is that "if [an] appellee in its brief seeks only to support or defend and uphold the judgment of the lower court from which the opposing party appeals, a cross-appeal is not necessary."  *Maricopa Cnty. v. Corp. Comm'n*, 79 Ariz. 307, 310, 289 P.2d 183, 185 (1955).  A cross-appeal is required only if the appellee seeks "to attack [the] judgment with a view of either enlarging his rights thereunder or lessening the rights of his adversary."  *Id.* (internal quotations omitted).  Merely seeking to support a lower court's judgment for reasons not relied upon by it "is not attempting to enlarge [an appellee's] own rights or lessen those of [an] adversary," and a cross appeal is unnecessary. *Santanello v. Cooper*, 106 Ariz. 262, 265, 475 P.2d 246, 249 (1970); *see also* Ariz. R. Civ. App. P. 1, 13, State Bar Committee Note.  As a prevailing party not seeking to expand its own rights, the County was not required to file a cross-appeal.

## C.

¶21     We also granted review on the County's claim that the Desert Ridge golf course property should be classified separately from the resort property because golf course property is listed as belonging to Class One or Class Two under §§ 42-

12001(9) and 42-12002(1)(d). Rather than decide this issue, we leave it to the tax court to address in the first instance when it considers the primary use of the Desert Ridge property for purposes of § 42-12009(A)(1)(b).

**D.**

¶22    Finally, we address the County's argument that CNL was not entitled to relief under the error correction statute. Section 42-16251(3) authorizes correction of "any mistake in assessing or collecting property taxes" when the error is caused by any circumstance listed in subsections (3)(a) through (3)(e). The County maintains that the court of appeals wrongly concluded that the statute applies to the kind of "errors" CNL alleged.

¶23    Subsection (3)(b) includes "[a]n incorrect designation or description of the use or occupancy of property or its classification."  The court of appeals correctly concluded that because Desert Ridge had been wrongly categorized under Class One, CNL could avail itself of the error correction statute. *CNL Hotels*, 226 Ariz. at 162 ¶ 30, 255 P.3d at 599.

¶24    The County, however, contends that subsection (3)(e) bars CNL's recovery.  Subsection (e) states that error exists when "a valuation or legal classification [of property] is based on an error that is exclusively factual in nature or due to a specific legal restriction . . . and that is objectively verifiable without the exercise of discretion, opinion or

12

judgment." The County argues that CNL cannot qualify for relief under subsection (3)(e) because meeting the primary use requirement for Class Nine involves factual determinations subject to discretion, opinion, or judgment. But even assuming *arguendo* that the County is correct about subsection 3(e), nothing in § 42-16251 suggests that a taxpayer's inability to seek relief under one subsection bars relief under another.

## III.

¶25 For the foregoing reasons, we vacate the court of appeals' opinion and remand the case to the tax court for further proceedings consistent with this opinion. We deny CNL's request for attorney fees, without prejudice to CNL requesting the tax court to award it fees for this stage of proceedings if it prevails on remand. *See* Ariz. R. Civ. App. P. 21(c); *Leo Eisenberg & Co. v. Payson*, 162 Ariz. 529, 535, 785 P.2d 49, 55 (1989).


_____
                 Robert M. Brutinel, Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Scott Bales, Vice Chief Justice

_____

A. John Pelander, Justice


_____*

14