286 P.3d 174

**SCOTTSDALE PRINCESS PARTNER-SHIP, an Arizona corporation, Plaintiff/Appellant,**

v.

**MARICOPA COUNTY, a political subdivision of the State of Arizona, Defendant/Appellee.**

**No. 1 CA–TX 10–0004.**

Court of Appeals of Arizona, Division 1, Department T.

Oct. 4, 2012.

Ballard Spahr LLP by Brian W. LaCorte, Phoenix, and Gallagher & Kennedy, P.A. by Mark A. Fuller, James G. Busby, Jr., Phoenix, Attorneys for Plaintiff/Appellant.

Helm, Livesay & Worthington, LTD by Roberta S. Livesay, Raushanah Daniels, Tempe, Attorneys for Defendant/Appellee.

## OPINION

HALL, Judge.

¶ 1 Scottsdale Princess Partnership (Taxpayer) challenges Maricopa County's classification of the Fairmont Scottsdale Princess Resort land and improvements (the Property) as Class One property under Arizona Revised Statutes (A.R.S.) section 42–12001(12) (2003). Taxpayer contends that the Property qualifies for Class Nine status under A.R.S. § 42–12009(A)(1)(b) (2003) because it is used primarily for convention activities. The tax court upheld the Class One classification, which applies to commercial and industrial properties. Based on a fair reading of the statute, we affirm that judgment.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Taxpayer owns the Property and is liable for its property taxes for the 2003 through 2005 tax years. The hotel on the Property contains 651 rooms and is a total of 548,486 square feet, with 57,530 square feet of interior meeting space. It also features a ballroom measuring about 22,500 square feet. The Property's hotel also provides smaller meeting rooms in casitas and restaurants, along with additional meeting space in a villa.

¶ 3 A large portion of Taxpayer's improvements, buildings, fixtures, and equipment is located on land leased from the City of Scottsdale (the City), and the remaining portion lies on land owned by Taxpayer.[1] All buildings, improvements, fixtures, and equipment described in the 1985 Ground Lease with the City will become City property when the ninety-nine year leasehold terminates. During the relevant period, the Property hosted more than twenty groups, including the Sigma Sigma Sigma National Convention, the Dial Corporation National Sales Meeting, and the Destination Play Station Conference.

¶ 4 Taxpayer claims that the Class One determination for the 2003, 2004, and 2005 tax years is an "error" under A.R.S. § 42–16251(3) (2006). It argues that the Property qualified as Class Nine, A.R.S. § 42–12009(A), not Class One, A.R.S. § 42–12001(12), and an error correction and refund were required in light of Taxpayer's overpay-

---

1. The fee-owned land, which contains tennis casitas, golf villas, and some meeting space, has consistently received a Class One classification. This appeal concerns only the improvements on the possessory-interest land.

ments.[2]  After failing to resolve the dispute and exhausting its administrative remedies with the County and the Arizona Board of Equalization, Taxpayer appealed to the tax court in accordance with A.R.S. § 42–16254(G) (Supp.2011).

¶ 5 The parties initially filed motions for summary judgment, but then jointly stipulated to withdraw the motions due to factual issues concerning the correct classification of the Property.  The tax court told the parties: "The issue appears to be primarily one of applying uncontested facts to A.R.S. § 42–12009(A)(1)(b), in particular, determining whether 'convention activit[y]' under the statute includes the lodging and feeding of convention attendees and if so whether such use is a (or the) primary one of [the Property] and improvements."

¶ 6 Taxpayer then moved for summary judgment on the classification, but the tax court denied the motion after briefing and oral argument.  It conducted a four-day bench trial in an effort to determine how the Property was used.

¶ 7 Ultimately, the tax court affirmed the Property's Class One classification, reasoning that "convention activities" can involve only "core convention activities" and not other human activities or "the whole of daily life." Accordingly, the Property did not qualify for Class Nine classification because the revenue relied upon by Taxpayer to establish its entitlement to Class Nine treatment was largely derived from room and dining charges attributable to group bookings for ten or more room nights, as distinguished from rent for ballroom and other spaces accommodating only conventions.  Moreover, the tax court did not even find evidence to support primary use under Taxpayer's broader definition of convention activities:  "Nothing in Scottsdale Princess's presentation has shown that 'convention activities' constitute the primary use, however it is measured, of the property."

¶ 8 The tax court entered a final judgment in favor of the County, and this timely appeal followed.  We have jurisdiction pursuant to A.R.S. § 12–2101(B) (Supp.2011).

## DISCUSSION

**I.  The Record Fails To Establish That The Property Is Used Primarily For Convention Activities Under A.R.S. § 42–12009(A)(1)(b).**

¶ 9 The pivotal question on appeal is whether the Property meets the requirements of A.R.S. § 42–12009(A)(1)(b).  If it does not, the Property is appropriately classified as Class One commercial property "devoted to any other commercial or industrial use, other than property that is specifically included in another class described in this article...." A.R.S. § 42–12001(12).  *See U–Stor Bell, L.L.C. v. Maricopa County*, 204 Ariz. 79, 81, ¶ 11, 59 P.3d 843, 845 (App.2002).

■  ¶ 10 We review de novo "the tax court's construction of statutes and findings that combine facts and law," but review its factual findings for "clear error." *Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, 383, ¶ 15, 166 P.3d 934, 938 (App.2007).

¶ 11 As a preliminary matter, Taxpayer contends that A.R.S. § 42–12009 should be interpreted liberally in favor of the taxpayer because it is a statute imposing a tax liability. *See State ex rel. Ariz. Dep't of Revenue v. Capitol Castings, Inc.*, 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004); *see also City of Phoenix v. Borden Co.*, 84 Ariz. 250, 252–53, 326 P.2d 841, 843 (1958) (explaining that statutes creating property tax liability are "most strongly construed against the government and in favor of the taxpayer").  The County, on the other hand, argues that the statute should be strictly construed because property falling within that classification is taxed at a lower assessment ratio than other

---

**2.** The classification of property determines the percentage by which its full cash value is multiplied to determine its assessed valuation.  Class One property was assessed at twenty-five percent of its full cash value (until December 31, 2005), A.R.S. § 42–15001(1) (2006 & Supp.2011), while Class Nine property was assessed at one percent of its full cash value.  A.R.S. § 42–15009 (2006). The tax rate is applied against the assessed valuation to determine the amount of taxes owed on the property.  *See Bella Vista Ranches, Inc. v. Cochise County*, 159 Ariz. 326, 328, 767 P.2d 49, 51 (App.1988).

commercial property. *See Ariz. Dep't of Revenue v. Raby,* 204 Ariz. 509, 511–12, ¶ 16, 65 P.3d 458, 460–61 (App.2003). We conclude that, regardless of which rule of construction applies, the term "convention activities" in A.R.S. § 42–12009(A)(1)(b) cannot be read so broadly as to bring Scottsdale Princess within the ambit of Class Nine property; therefore, we need not determine which rule applies under the circumstances of this case.

### A. The Statutory Framework

¶ 12 In 1994, the Arizona Legislature created a new property class with a preferential tax rate for private developments of specified types of facilities on government-owned land, including improvements "used primarily for . . . convention activities." 1994 Ariz. Sess. Laws, ch. 293, § 1 (2d Reg.Sess.) (then listing the provision as Class Thirteen), codified at A.R.S. § 42–162. This statute is designed "to keep with past legislative decisions to provide tax relief for owners of certain possessory interests." Final Revised Fact Sheet for S.B. 1116, 1, 42d Leg., 2d Reg. Sess. (May 7, 1996). This new classification was part of a global series of amendments following a tax court ruling that granting tax exemptions for possessory interests in government lands was unconstitutional. *Id.* The statute was re-enacted in connection with other amendments, and until recently, was numbered as A.R.S. § 42–12009(A)(1), which provided Class Nine status for the following:

Improvements that are located on federal, state, county or municipal property and owned by the lessee of the property if:

(a) The improvements become the property of the federal, state, county or municipal owner of the property on termination of the leasehold interest in the property.

(b) Both the improvements and the property are *used primarily* for athletic, recreational, entertainment, artistic, cultural or *convention activities.*

(Emphasis added). The County conceded during summary judgment briefing that the Property satisfied A.R.S. § 42–12009(A)(1)(a). The dispute focuses on whether the Property satisfies the "used primarily for . . . convention activities" requirement of A.R.S. § 42–12009(A)(1)(b).[3]

¶ 13 Section 42–12009(A)(1)(b) does not expressly limit "convention activities" to a specific type of facility, such as a convention center, and therefore does not necessarily exclude a hotel hosting a convention. It is not enough, however, that the Property is merely used for convention activities or in connection with convention activities. *Id.; compare* A.R.S. § 42–12009(A)(2)(b)(i) (Supp. 2011) (applying Class Nine to improvements "[u]sed for or in connection with aviation"). Rather, A.R.S. § 42–12009(A)(1)(b) mandates that both the land and the improvements be used "primarily for" that purpose. *Id.; compare* A.R.S. § 42–12009(A)(5) (Supp.2011) (according Class Nine status to a portion of real property or improvements leased for operation of a charter school).

¶ 14 The phrase "used primarily for" is not used elsewhere in A.R.S. § 42–12009. We therefore turn to respected dictionaries for guidance. *See Rigel Corp. v. State,* 225 Ariz. 65, 69, ¶ 19, 234 P.3d 633, 637 (App. 2010); *see also* A.R.S. § 1–213 (2002) ("Words and phrases shall be construed according to the common and approved use of the language."). "Primarily" means "first of all," "principally," or "fundamentally." *Tucson Botanical Gardens, Inc. v. Pima County,* 218 Ariz. 523, 527, ¶ 13, 189 P.3d 1096, 1100 (App.2008) (citing 12 *Oxford English Dictionary* 472 (2d ed.1989); *Webster's Third New*

---

**3.** As amended in 2012, A.R.S. § 42–12009(A)(1)(b) now provides: "Improvements that are located on federal, state, county or municipal property and owned by the lessee of the property if . . . [b]oth the improvements and the property are used *exclusively* for athletic, recreational, entertainment, artistic or cultural facilities." (Emphasis added).

The category of "convention activities" is treated the same as before but now appears separately in its own subsection, which states in relevant part: "Improvements that are located on federal, state, county or municipal property and owned by the lessee of the property if . . . [b]oth the improvements and the property are used primarily for convention activities." A.R.S. § 42–12009(A)(6)(b). Because the amendment is not retroactive, it has no effect on the tax years in question here.

*International Dictionary* 1800 (2002); *Webster's Seventh New Collegiate Dictionary* 675 (1970)); *see also The American Heritage Dictionary of the English Language* 1438 (3rd ed.1992) (defining "primarily" as "chiefly; mainly").

¶ 15    Accordingly, A.R.S. § 42–12009(A)(1)(b) requires the court to determine whether the principal or fundamental use of the Property and its improvements is for "convention activities" and not, as Taxpayer argues, for "convention-related" activities or convention "packages." *See id.; see also Pesqueira v. Pima County Assessor,* 133 Ariz. 255, 256, 258, 650 P.2d 1237, 1238, 1240 (App.1982) (holding that, for purposes of tax classification, a property had either an agricultural or a commercial use, to the exclusion of the other, and not an incidental use; this classification applied irrespective of the taxpayer's view of the other use as an integral part of the operations), *superseded by statute on other grounds as stated in Hing v. Maricopa County,* 224 Ariz. 421, 231 P.3d 953 (Tax.2010).  We look to the actual use of the relevant land and improvements to decide this issue.

### B.    The Tax Court Reasonably Adopted A Limited Definition Of "Convention Activities."

¶ 16 Our task is to determine whether the County Assessor's Class One determination constitutes an "error," which the relevant error correction statute defines as "any mistake in assessing or collecting property taxes resulting from ... [a]n incorrect designation or description of the use of property or its classification...." A.R.S. § 42–16251(3)(b) (2006).  Taxpayer contests the tax court's ruling that the Property—including land and improvements—is not used primarily for convention activities for purposes of classification under A.R.S. § 42–12009(A)(1)(b).

¶ 17 Taxpayer urges that its facilities are used primarily to accommodate convention-related activities and that the amount of

meeting space it devotes to such activities meets the industry standard necessary to qualify as a "convention hotel."  But as a measure of whether Taxpayer satisfies the statutory requirement that its property and improvements are used primarily for convention activities, both parties focus their arguments first on which activities engaged in by convention-goers should be included within the term "convention activities," and, second, what percentage of the Taxpayer's revenue derives from activities properly included within that term.

¶ 18 As to the threshold issue of what is encompassed by the term "convention activities," neither A.R.S. § 42–12009 nor any of its associated statutes defines this term. During trial, the parties offered competing definitions of "convention" and "convention activities."

¶ 19 Robert A. Hayward of Warnick & Co., testified on behalf of Taxpayer that a "group" is synonymous with a convention, and the hospitality industry defines "group" business as ten occupied room nights on any given night.  Hayward stated that groups of wedding celebrants may technically qualify as conventions if they satisfy the ten room nights requirement, but would not "necessarily be a convention."  He did testify that a "convention activity" could include anything a group member did at the resort hosting the convention, including eating, sleeping, socializing, and enjoying recreation or entertainment.

¶ 20 Brent Lunt, Taxpayer's chief financial officer and a key witness, likewise defined a "group" as "a group of people that come to the hotel and stay and have booked at least ten room nights on any particular day." "Group" business does not include tour/wholesale business or business travelers unaffiliated with a group.  Lunt agreed that a wedding was not a convention, but conceded that group business was a category that included weddings, Bar and Bat Mitzvahs, and other social components.[4]

---

4.   To further bolster its argument, Taxpayer relies upon the definition of "convention hotel" found in the Appraisal Institute's Dictionary of Real Estate Appraisal.  The definition states:

Hotels designed to accommodate large groups and functions.  They provide facilities such as one or more large ballrooms with breakout areas for meetings and conferences, exhibit space for trade shows, sample and display

¶ 21 The County's expert, Ralph Brekan, offered a different definition. He testified that the Phoenix Convention Center defines a convention as one with "a minimum of 200 room nights in a peak night."

¶ 22 As did the tax court, we reject the use of these industry definitions of convention and convention activities. Although the manner in which "group" is defined for the hospitality industry may have significance for accounting and record-keeping purposes, neither the text of the statute nor legislative history provide any indication that our Legislature intended that the word "convention" be treated as synonymous with "group" or that any meeting in excess of ten people necessarily constituted a "convention" for purposes of A.R.S. § 42–12009(A)(1)(b). We likewise attach no significance to the testimony of the County's expert that the concept of a convention requires a bare minimum of 200 room nights. *See Kilpatrick v. Superior Court,* 105 Ariz. 413, 421, 466 P.2d 18, 26 (1970) ("Words are to be given their usual and commonly understood meaning unless it is plain or clear that a different meaning was intended."); *see also State Tax Comm'n v. Peck,* 106 Ariz. 394, 395, 476 P.2d 849, 850 (1970) (applying the ordinary meaning of "leasing" and "renting" because "it does not appear from the context that a special meaning was intended"). Because there is no indication that the Legislature intended a technical meaning for "convention" or "convention activities," the tax court properly looked to the ordinary meaning of the terms.

■ ¶ 23 The tax court generally defined a convention as "an assemblage of some formality comprising a substantial number of attendees who share an interest that is the subject of the gathering." In defining a "convention activity," the tax court rejected the

Taxpayer's assertion that the term should include any activity engaged in by a person attending a convention, such as sleeping, eating, or recreating.[5] Instead, the court determined that convention activity "must be limited to activities distinctive to conventions, which would generally not be performed outside of the convention context." Although we determine de novo the proper interpretation to be given the term "convention activities," we approve of the tax court's definition as a common-sense interpretation arrived at after a careful consideration of the statutory text and the parties' arguments regarding the definition of the term. *See Webster's Ninth New Collegiate Dictionary* 286 (9th ed.1983) (defining convention as "the summoning or convening of an assembly[;] an assembly of persons met for a common purpose"); *see also The American Heritage Dictionary of the English Language* 411 (3rd ed.1992) (defining convention as a "formal meeting of members, representatives, or delegates, as of a political party, fraternal society, profession, or industry").

¶ 24 Section 42–12009(A)(1)(b) is not directed to Taxpayer's convention business or a convention; rather, it applies to "convention activities." The tax court correctly identified "convention activities" as distinct from "hotel activities." As the County points out, if all it takes to qualify a property for a Class Nine classification under the convention activities category is to book ten rooms for one night, there would be no need for the "convention activities" category. Moreover, the fact that Taxpayer offers "block room contracts" does not necessarily preclude the possibility that a guest would attend a convention or "group" gathering while obtaining meals or lodging elsewhere. We also believe the definition

---

rooms for sales meetings, extensive restaurant and catering, extensive restaurant and lounge capacity and the same recreational amenities found in commercial hotels.

The key component is meeting space, which should amount to at least 30 square feet per guest room. They are sometimes located next to convention centers.

5. As conceived by Taxpayer, the term includes any activity undertaken by a person attending a convention:

Logically, activity associated with a convention begins when the attendee arrives, checks in, and proceeds to participate in all of the group-related activities during his or her stay, including not only lodging at the convention rate and attendance at meetings, but also networking, eating, socializing, engaging in recreation, and resting. These require the use of virtually all of the facilities, amenities, and services. Put another way, the [Taxpayer] provides a package which allows the attendees to address all of their convention-related activities on-site.

arrived at by the tax court is flexible enough to accommodate a wide variety of actual scenarios.

¶ 25 Finally, our conclusion that the term "convention activities" cannot be stretched so far as to include all activities engaged in by a conventioneer is lent support by the other activities listed as qualifying for Class Nine treatment under A.R.S. § 42–12009(A)(1)(b), which include athletic, recreational, entertainment, artistic, and cultural activities. These activities, like convention activities, do not encompass the whole of daily life, and, therefore, support a more limited definition than that sought by the Taxpayer.

### C. The Evidence Fails To Demonstrate That The Property Is Primarily Used For Convention Activities.

¶ 26 Taxpayer additionally challenges the tax court's holding that the evidence failed to support primary usage for convention activities. In addition to relying on expert testimony, Taxpayer contends that the Property's design, industry awards, and business and financial records support its qualification for Class Nine classification.

¶ 27 Specifically, Taxpayer points out that the Property's conference center lies at the core of the development and contends that the Property was "purpose-built" to accommodate convention business. In addition, the *Business Journal* ranks the Property among the top ten "convention and meeting sites" in Phoenix.

■ ¶ 28 This context is helpful, but the question for review remains whether the land and improvements were actually and primarily used for convention activities under A.R.S. § 42–12009(A)(1)(b). *See United Physicians, Inc. v. Pima County*, 206 Ariz. 63, 69, ¶ 32, 75 P.3d 153, 159 (App.2003); *U–Stor Bell*, 204 Ariz. at 82 n. 3, ¶ 16, 59 P.3d at 846 n. 3. Classification must be determined by an "objective, functional standard and not by reference to the motivating purpose of the current owner." *Hayden Partners Ltd.*

*P'ship v. Maricopa County*, 166 Ariz. 121, 125, 800 P.2d 987, 991 (App.1990).

¶ 29 In this context, Taxpayer argues that its property was being used primarily for convention activities because its business and financial records reflect it received about two-thirds of its revenue from "group convention business." According to Taxpayer, its 2002 records reflect that "67.7% of occupancy was devoted to convention associations, corporate meetings and other group business." Indeed, Lunt testified that "group hotel" business accounted for at least two-thirds of Taxpayer's business. Further, "historically, group business accounted for 65–75% of revenue." To arrive at its two-thirds estimate, Taxpayer combined group income generated in conjunction with room revenue and food and beverage sales. Taxpayer derived this figure from the Property's record of "group" room arrangements and corresponding food and beverages sales associated with those groups. Given our previous discussion in ¶¶ 23–25 rejecting the inclusion of sleeping rooms and all meals and beverages within the term "convention activity," we do not find this estimate persuasive on the issue of primary use.[6]

■ ¶ 30 Even if we were to accept Taxpayer's definition of convention activities and view its financial records as an accurate measure of its use of the Property, the record in this case provides insufficient support for its quantification of convention activities. As explained previously, Taxpayer's financial records list convention/association revenues with other "group" revenues.

¶ 31 Lunt conceded that the Property does not provide a special rate for conventions. All room booking rates are a function of what the guest asks for and what the resort is willing to accept. Further, nothing in the financial records would allow Taxpayer to calculate with certainty how many people who are classified as a "group" for purposes of revenue actually attend a convention at the Property. For example, four people

---

6. Taxpayer claims that the tax court erred by excluding banquet revenue from "convention activity" revenue. Even assuming, however, that revenue from a banquet held as part of a convention program qualifies as convention revenue, Taxpayer's financial records do not contain a separate entry for banquet revenue derived from convention activity. We are therefore unable to discern what percentage of Taxpayer's revenue is derived from convention banquets.

could occupy a room and only one might attend the convention.

¶ 32 Another impediment to our review is Taxpayer's failure to clearly separate convention income from other group business, including weddings and Bar and Bat Mitzvahs. Lunt testified that wedding groups would have banquet characterization as a "local" group, but for purposes of room categorization they would be an "association" subgroup if renting more than ten rooms. Further, Taxpayer's financial statements failed to distinguish between the revenues received from fee-owned and leased land. The group label was not even consistently applied; for example, one witness for Taxpayer acknowledged that a three room night pre-planning meeting for the International Association of Facilitators was classified as a convention/group.

¶ 33 In view of this evidence, the tax court rightly found that it was "difficult to discern from the Scottsdale Princess's financial statements what fraction of its revenue from room rental and restaurants derives from conventions, especially as those who made the designation did not always do so consistently." The tax court acknowledged that a "symbiotic" relationship might exist between the convention activities and the hotel activities (lodging and dining), but found "in no sense is the hotel activity incidental to the convention activity." Thus, because Taxpayer's rec-

ords did not separate convention income from other admitted, non-convention group income, the Taxpayer failed to meet its burden that the Property was used primarily for convention activities under A.R.S. § 42–12009(A)(1)(b).

¶ 34 Accordingly, we conclude that the tax court did not clearly err in holding that Taxpayer's evidence failed to support an error in classification under either party's definition of "convention activities." [7]

## CONCLUSION

¶ 35 We affirm the tax court's Class One classification of the Property for the 2003 to 2005 tax years. In addition, we deny Taxpayer's request for attorneys' fees and litigation expenses pursuant to A.R.S. § 12–348(B)(1) (Supp.2011).

CONCURRING: MICHAEL J. BROWN, Presiding Judge, and PATRICIA K. NORRIS, Judge.

---

**7.** In their briefing on appeal, both parties dispute the impact of this court's discussion in *CNL Hotels and Resorts, Inc. v. Maricopa County*, 226 Ariz. 155, 244 P.3d 592 (App.2010), regarding the tax court's finding that the property in that case was used for convention activities under A.R.S. § 42–12009(A)(1)(b). Given that our opinion in *CNL Hotels* was recently vacated, *see CNL Hotels and Resorts, Inc. v. Maricopa County*, 230 Ariz. 21, 279 P.3d 1183 (2012), the discussion of that issue does not assist either party here.