NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

KELILA RENEE LINCOLN,
*Petitioner/Appellant*,

*v.*

EDWARD M. MCDANIEL,
*Respondent/Appellee*.

No. 1 CA-CV 25-0252 FC

FILED 01-20-2026

Appeal from the Superior Court in Maricopa County
No.  FC2016-095724
The Honorable Steven McCarthy, Judge

**AFFIRMED**

COUNSEL

Colburn Hintze Maletta, PLLC, Phoenix
By Henry Alzate
*Counsel for Petitioner/Appellant*

Edward M. McDaniel, Phoenix
*Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

_____

**B E C K E**, Judge:

**¶1**　　　　Kelila Renee Lincoln ("Mother") appeals the superior court's order granting Edward M. McDaniel ("Father") final legal decision-making authority and child support and denying Mother's request to move their child to Georgia. For the reasons below, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Mother and Father were divorced in 2017 by default decree. They have one child in common who is currently 10 years old. In 2019, Father filed a petition to modify legal decision-making, parenting time, and child support. A hearing was held on the motion in May 2020, and the court awarded Mother sole legal decision-making authority and child support, while Father was awarded parenting time.

**¶3**　　　　Just a few months later, in October 2020, Mother moved to Georgia with the child. Mother testified that she did this with Father's verbal permission, though Father contests he knew the move would be permanent. In April 2022, Mother petitioned the court for relocation to allow her and the child to remain in Georgia. In May 2022, the court issued a temporary order allowing relocation and awarding Father a long-distance parenting plan.

**¶4**　　　　In May 2023, Mother brought the child to Arizona to live with Father. Mother planned to have the child live in Arizona for six months and then Georgia for six months, though Father did not agree to this because it would not provide the child with stability. The child remained in Arizona with Father until January 2024, when Mother, without notifying Father, picked the child up from school in Arizona and brought the child back to Georgia.

**¶5**　　　　Father soon after petitioned to be awarded sole legal decision-making authority, to be the primary residential parent, and for Mother to be awarded a long-distance parenting plan. An evidentiary hearing was held a year later in January 2025, at which Mother and Father both testified.

2

In February 2025, the court issued an order awarding the parents joint legal decision-making authority, with Father having final legal decision-making over any major issues the parties could not resolve after making good faith efforts. The order also designated Father as the primary residential parent and ordered Mother to pay Father child support.

**¶6**        Mother timely appeals the superior court's order. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶7**        Mother raises four issues: 1) that the court should have transferred jurisdiction to Georgia under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") or held a hearing to consider it, 2) that the court abused its discretion in granting Father final legal decision-making authority, 3) that the court incorrectly found Mother "unilaterally" removed the child to Georgia in January 2024, and 4) that the domestic violence committed by Father was significant and therefore he should not have been awarded joint legal decision-making authority.

## I.    The Superior Court Did Not Abuse its Discretion by Not Holding a Hearing on Changing Venue Under the UCCJEA.

**¶8**        Mother argues that Arizona should have transferred jurisdiction to Georgia for three reasons: 1) Georgia became the child's home state because of the temporary relocation order in place, 2) Arizona no longer had exclusive, continuing jurisdiction, and 3) Arizona is an inconvenient forum.

### A.    Home state jurisdiction

**¶9**        Mother argues that the temporary order granting relocation meant the child's home state had changed from Arizona to Georgia. However, "home state" means the state where "a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." A.R.S. § 25-1002(7)(a). It does not mean the state where the child currently lives. *See In re Marriage of Morris & Mandel*, 255 Ariz. 158, 161, ¶ 12 (App. 2023) (stating that physically leaving the state does not mean that that state's court has lost jurisdiction, "[r]ather a court has jurisdiction to modify its initial determination" if it had initial child custody jurisdiction).

3

**¶10** Here, the child lived in Arizona for at least six months prior to the commencement of the custody proceeding, and therefore Arizona had jurisdiction to make that initial custody determination. A.R.S. § 25-1031(A)(1) ("[A] court of this state has jurisdiction to make an initial child custody determination . . . if . . . [t]his state is the home state of the child on the date of the commencement of the proceeding.").

**¶11** That jurisdiction was not lost to Georgia due to the temporary order in place because home state jurisdiction is exclusive and continuing. *Angel B. v. Vanessa J.*, 234 Ariz. 69, 72, ¶ 11 (App. 2014) ("Once a court with original jurisdiction issues an initial child custody order, the UCCJEA gives that court exclusive, continuing jurisdiction over all future custody determinations."). Arizona thus had jurisdiction unless it lost its exclusive, continuing jurisdiction. We next examine whether Arizona had exclusive, continuing jurisdiction at the time of the order.

### B. Exclusive, continuing jurisdiction

**¶12** Mother next argues that the court should have transferred jurisdiction to Georgia because Arizona no longer had exclusive, continuing jurisdiction under A.R.S. § 25-1032. We review the superior court's UCCJEA jurisdiction *de novo*. *Gutierrez v. Fox*, 242 Ariz. 259, 264, ¶ 17 (App. 2017).

**¶13** Under A.R.S. § 25-1032, Arizona has exclusive, continuing jurisdiction because it was the state where the initial child custody determination took place. *See Angel B.*, 234 Ariz. at 72, ¶ 11. That jurisdiction continues until one of two things occurs: (1) the court finds "that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships," A.R.S. § 25-1032(A)(1), or (2) the Arizona or another state's court "determines that the child, the child's parents and any person acting as a parent do not presently reside in this state." A.R.S. § 25-1032(A)(2). Neither of those events occurred.

**¶14** Father lived in Arizona, the child's maternal grandmother and great-grandmother lived in Arizona, and the child had friends from school and other family in Arizona, showing that the child had a significant connection with the state. Father provided the child with health insurance through his employment while working in this state. Thus, substantial evidence is available in Arizona concerning the child's care, protection, training, and personal relationships. *See* A.R.S. § 25-1032(A)(1).

¶15            Indeed, Mother concedes in her opening brief that Arizona has exclusive, continuing jurisdiction. With only limited exceptions, "the decision to discontinue exclusive, continuing jurisdiction belongs to the court exercising it, and no other." *Melgar v. Campo*, 215 Ariz. 605, 607, ¶ 11 (App. 2007). The superior court did not err in exercising exclusive, continuing jurisdiction over this matter.

### C.     *Inconvenient forum*

¶16            Mother then argues that the superior court should have held a hearing before denying her motion to change venue to Georgia. She argues that the court should have declined to exercise jurisdiction because it was an inconvenient forum under A.R.S. § 25-1037. *See* A.R.S. § 25-1037(A) (stating that a court may decline to exercise its jurisdiction if it deems itself an inconvenient forum and that another state's court is a more appropriate forum).

¶17            But, Mother's motion to change venue did not argue that Arizona was an inconvenient forum under A.R.S. § 25-1037. Rather, it argued that Georgia was the child's home state and therefore had jurisdiction over the matter, citing only "the UCCJEA" in support of her contention. Because Mother did not bring an inconvenient forum argument to the superior court, we consider this issue waived. *See Ertl v. Ertl*, 252 Ariz. 308, 316, ¶ 29 (App. 2021) (waiving issues on appeal that were not raised before the family court).

## II.     The Superior Court Did Not Abuse its Discretion by Granting Father Final Legal Decision-Making Authority.

¶18            Mother argues that because the court found that Mother and Father could communicate with each other electronically, then it was not in the best interests of the child to give Father final decision-making authority. Mother asks us to "vacate the final decision-making award to Father and reinstate joint legal decision-making." We review the superior court's legal decision-making orders for abuse of discretion. *Gish v. Greyson*, 253 Ariz. 437, 444, ¶ 31 (App. 2022).

¶19            When deciding issues of legal decision-making, the court must do so "in accordance with the best interests of the child." A.R.S. § 25-403. The court shall consider the factors in A.R.S. § 25-403(A) and -403.01(B) in "determining the level of decision-making that is in the child's best interests." A.R.S. § 25-403.01(B). When, as here, legal decision-making is a contested issue, the court must "make specific findings on the record about

all relevant factors and the reasons for which the decision is in the best interests of the child." A.R.S. § 25-403(B).

¶20 The court properly considered the factors in A.R.S. §§ 25-403(A) and -403.01(B) in making its determination. *See* A.R.S. § 25-403(B). It made findings on each relevant factor. These findings included that "the child has significant family ties in Arizona," that the child has his own room in Arizona, that Mother owns dogs and the child is allergic to dogs, and that the child, although young, stated he preferred school in Arizona and has lots of friends there.

¶21 The court found that, while Mother and Father could communicate with each other, they "have struggled with cooperating to the extent needed to effectively coparent . . . ." Additionally, the court noted that circumstances had changed since 2022 and now "one party having final decision-making authority will assist the parties and be in the best interest of the child." Communication is only one factor out of the many that the court considered and the court did not abuse its discretion in determining that granting final legal decision-making authority to Father was in the child's best interests. *See Hurd v. Hurd*, 223 Ariz. 48, 51, ¶ 11 (App. 2009) (noting the superior court is required to consider all relevant factors when deciding child custody).

¶22 Mother also contends that since the court found the parties could communicate with each other, then it must grant joint decision-making authority. But, the court did grant the parties joint decision-making authority. It granted Father final decision-making authority if the parties were not able to "agree after making a good faith effort to reach an agreement."

III. **The Superior Court's Finding that Mother Unilaterally Removed the Child from Arizona is Supported by the Record and Not Clearly Erroneous.**

¶23 Mother next argues that the court incorrectly found that she had "unilaterally" removed the child from Arizona to Georgia in January 2024. She contends that this finding was prejudicial to her as it means that she "wrongfully" removed the child, even though she had a court order allowing her to do so. "We defer to the [superior] court's factual findings that are supported by the record and not clearly erroneous." *State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9 (App. 2000). We do not reweigh the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018).

¶24 Mother conflates "unilateral" and "wrongful." The court stated that "the temporary orders [allowing relocation] . . . remain in place." Nothing in the court's order characterizes Mother's actions as wrongful or indicates a lack of awareness that a valid relocation order existed.

¶25 "Unilateral" simply means: "done or undertaken by one person or party." *Unilateral*, Merriam-Webster, https://www.merriam-webster.com/dictionary/unilateral (last visited December 4, 2025). Father testified that in January of 2024, Mother "went and withdrew [the child] from school. [Father] didn't have any notification prior that that was going to happen." This supports the court's finding that Mother unilaterally took the child to Georgia, meaning Mother did so alone. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998) ("We will defer to the [superior] court's determination of witnesses' credibility and the weight to give conflicting evidence."). Although Father's consent was not needed because there were temporary court orders allowing the relocation, the word "unilateral" is not an incorrect finding given Father's testimony.

¶26 Therefore, the court's finding that Mother unilaterally removed the child to Georgia in January of 2024 was supported by the record and not clearly erroneous.

¶27 Mother makes a separate argument that Father presented no evidence to support the court's conclusions. However, Father testified at the evidentiary hearing about what occurred in January 2024. Testimony is evidence that the superior court can consider, *see, e.g., Maricopa Cnty. Juv. Action No. JV131701*, 183 Ariz. 481, 482 n.1 (App. 1995) ("In a contested hearing, testimony is evidence from a witness who is under oath and subject to cross-examination."), and we will not reweigh that evidence, *see Alma S.*, 245 Ariz. at 151, ¶ 18.

## IV. The Superior Court Did Not Abuse its Discretion by Finding that the Domestic Violence Was Not "Significant."

¶28 Mother finally argues that the court should have found that the domestic violence committed by Father was significant and therefore Father could not have been awarded joint legal decision-making authority. She then alternatively contends that Father could not have been awarded joint legal decision-making authority because he failed to rebut the presumption that it would be in the best interests of the child. *See* A.R.S. § 25-403.03(D). When domestic violence has occurred, but is not "significant," a rebuttable presumption is created that it is not in the child's best interests to award the offending parent joint or sole legal decision-making authority.

A.R.S. § 25-403.03(D). We review the superior court's legal decision-making order for abuse of discretion. *DeLuna v. Peitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019).

**¶29** When considering the best interests of the child in a contested legal decision-making case, the court must determine whether domestic violence has occurred, A.R.S. § 25-403(A)(8), and whether that domestic violence was "significant," A.R.S. § 25-403.03(A). *See DeLuna*, 247 Ariz. at 423, ¶ 11.

**¶30** A.R.S. § 25-403.03(A) does not define what makes domestic violence "significant." Instead, the superior court has "the discretion to weigh the evidence and determine the degree of the domestic violence's 'significance' for the purpose of § 25-403.03(A)." *DeLuna,* 247 Ariz. at 424, ¶ 15. Superior courts have previously used three factors in determining if the domestic violence was "significant": 1) seriousness of the domestic violence, 2) frequency and pervasiveness of the domestic violence, and 3) passage of time and the act's impact. *DeLuna*, 247 Ariz. at 424, ¶ 15 n.6. These factors are not from any Arizona court rule, case, or law, but we have previously held these factors to be reasonable in determining significance. *Id.*

**¶31** In accordance with A.R.S. § 25-403.03(C), the court considered findings from another court of competent jurisdiction, police reports, and witness testimony to determine if domestic violence had occurred. A.R.S. § 25-403.03(C)(1), (2), (7). The court found that there had been four instances of domestic violence, including an order of protection against Father from 2022, a 2015 police report where Father admitted to breaking a glass door and cell phone, that Mother had a workplace threat plan in place against Father, and that Father had attempted to withdraw money from her bank account in 2022. The court concluded Father had committed "acts of domestic violence against" Mother.

**¶32** Mother argues that the evidence presented showed that the domestic violence was "significant." If it was "significant," then Father could not have been awarded joint legal decision-making authority. A.R.S. § 25-403.03(A).

**¶33** The court found these acts were not "significant" domestic violence within the meaning of A.R.S. § 25-403.03(A). The superior court properly applied the *DeLuna* factors. *See DeLuna*, 247 Ariz. at 424, ¶ 15 n.6. The court then concluded that the domestic violence was not "significant as contemplated by [the] statute." The record supports the superior court's

findings of no "significant" domestic violence and thus it did not abuse its discretion.

¶34 When a superior court determines domestic violence occurred, but "that it was not 'significant,' § 25-403.03(D) creates a rebuttable presumption that it is contrary to the children's best interests to award sole or joint legal decision-making authority to the offending parent." *Id.* at 423, ¶ 12. The court must consider all six factors listed in § 25-403.03(E) and make specific findings on the record that there is sufficient evidence to rebut the presumption. *Id.* Mother argues that there was not sufficient evidence presented to support the court's finding that the presumption was rebutted.

¶35 However, the superior court made explicit findings on why the presumption was rebutted by considering all factors in A.R.S. § 25-403.03(E). The court found credible evidence was presented on two of the six factors: (1) the child was thriving while living with Father and therefore joint legal decision-making was in the child's best interest, and (2) Father had not committed domestic violence since 2022. *See* A.R.S. § 25-403.03(E)(1), (6). The other four factors were inapplicable: whether Father had completed a batterer's prevention program, whether he had completed alcohol or drug abuse counseling, whether he had completed a parenting class, and whether he was restrained by a protective order that was granted after a hearing. A.R.S. § 25-403.03(E)(2)–(5).

¶36 The record supports the superior court's findings, and, thus, the court did not abuse its discretion in finding that the presumption against joint legal decision-making authority was rebutted.

**V.    Attorneys' Fees.**

¶37 Mother requests attorneys' fees under ARCAP 21 and A.R.S. § 25-324. In our discretion, we decline to award Mother attorneys' fees.

¶38 Father also requests attorneys' fees on appeal, but he is not eligible because he represented himself in this appeal. *Munger Chadwick, P.L.C. v. Farwest Dev. & Constr. of the Sw., LLC*, 235 Ariz. 125, 126, ¶ 5 (App. 2014). We therefore deny his request for an award of fees on appeal.

¶39 Father also requests an award of the attorneys' fees he incurred in superior court even though the superior court denied that request. Father needed to bring a cross-appeal of the superior court's denial of his attorneys' fees. A cross-appeal is required when "the appellee seeks to attack the judgment with a view of either enlarging his rights thereunder

or lessening the rights of his adversary." *CNL Hotels & Resorts, Inc. v. Maricopa Cnty.*, 230 Ariz. 21, 25, ¶ 20 (2012) (cleaned up). Requesting an award of attorneys' fees attacks the judgment and enlarges Father's rights under it. *See Engel v. Landman*, 221 Ariz. 504, 510, ¶ 17 (App. 2009) ("The issues raised in Mother's cross-appeal all seek an enlargement of her rights . . . because she seeks to . . . obtain an award of attorneys' fees."). Because no cross-appeal was taken, we cannot consider this argument. *See Hoffman v. Greenberg*, 159 Ariz. 377, 380 (App. 1988) ("No cross-appeal was taken from the [superior] court's denial of attorney's fees. We therefore cannot consider this argument.").

**¶40**       Father, as the prevailing party, is awarded taxable costs upon compliance with ARCAP 21.

## CONCLUSION

**¶41**       We affirm.

